. For the reasons herein stated the judgments of conviction are, in each case, reversed.

COIL and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.

STATE of Missouri, Respondent,

v.

Eugene CROSS, Appellant.

No. 48092.

Supreme Court of Missouri,

Division No. 1.

Feb. 13, 1961.

John L. Sullivan, Brentwood, for appellant.

John M. Dalton, Atty. Gen., W. H. Bates, Spec. Asst. Atty. Gen., for respondent.

COIL, Commissioner.

A jury found defendant guilty of first degree robbery and fixed his punishment at five years in the penitentiary. Defendant has appealed from the ensuing judgment and inasmuch as he has filed no brief, we examine the four allegations of error in his motion for new trial. Those relate to the sufficiency of the information, the failure of the court to have admitted proffered evidence of defendant's character and to have instructed thereon, and to the prosecutor's argument.

The state's evidence tended to show that defendant and another, just after noon on a day in August 1959, accosted the prosecuting witness in an enclosed gangway which ran along the side of an apartment building; that defendant knocked the witness down and, while standing over him, took his wallet containing $43 from an inside coat pocket and removed some "change" from his right trousers pocket; that part of the money so taken belonged to the prosecuting witness and part to his employer, an insurance company on whose behalf the witness was making calls at the time; and that defendant's unmasked face was two or three feet away from the witness's face for a period of several minutes. The witness positively identified defendant as the person who had struck him and had removed the money from his person.

Defendant took the stand and denied that he had ever been at the place in question and adduced testimony tending to indicate that defendant was either engaged in a card game or was at home with some of his family at the time of the alleged robbery.

■ Defendant first contends the trial court erred in refusing to dismiss the information for the asserted reason that it failed to charge that defendant "feloniously obtained anything of value from the complaining witness." That assignment is without merit because the information specifically charged that defendant feloniously took from the person of the witness $43.76 lawful money of the United States of the value of $43.76.

Defendant next complains that the trial court erred in excluding proffered evidence of his good character. (Defendant's assignment of error complains of the exclusion of evidence pertaining to defendant's general reputation for "peace and non-violence," but the record shows that the proffered evidence was of defendant's general reputation, not limited to any particular character trait. Our ruling, however, is not based upon the failure, if any, to have properly limited the question.) Defendant's witness Whitfield testified that at the time of trial he was employed "out of Desmus House [Dismas House?], through Father Clark," but that he had been specially employed by defendant's counsel during the forepart of the week of the present trial to investigate the general reputation of the defendant in the community in which defendant lived. Upon objection there was a colloquy between court and counsel outside the hearing of the jury. As a result thereof, and of questions and answers prior thereto, it appears that defendant offered to prove, as circumstantial evidence of his good character, that his general reputation in the community in which he lived was good, by having the witness Whitfield testify that defendant's general reputation in the community in which he lived was good. It further appears that Whitfield's opinion or conclusion was based upon the fact that within "more than one day's period of time" he had talked with eighteen or twenty persons living in the immediate area of defendant's residence and had obtained from them either their separate opinions as to defendant's general reputation or their statements and comments about the defendant.

The record shows these questions and answers during the colloquy:

"The Court: What do you expect to prove?

"Mr. Sullivan: That at that time, during this visitation, conversing with people living

in that area that he ascertained his general reputation in that community and that it was good.

"The Court: That the people that he interviewed told him that his reputation was good?

"Mr. Sullivan: Well, the general reputation, yes. * * *

"The Court: Now, do you expect to elicit information of this witness with reference to the Defendant's reputation as given to this witness by people living in the neighborhood?

"Mr. Sullivan: Yes."

Thus, we are not able to say with any degree of certainty whether the witness's testimony that defendant's general reputation was good was based upon the conclusions of the persons with whom he talked that defendant's general reputation was good or upon the comments and statements made by those people of and concerning the defendant from which the witness formed an opinion.

The trial court's ruling was: "The objection would be sustained on the grounds that that would be hearsay coming from this witness, but you would be permitted to bring in any witness who might know of their own knowledge, based upon sufficient contact with the people with whom the Defendant associated, to testify as to the Defendant's reputation. The objection will be sustained to the line of interrogation of this witness with reference to what others told him about the Defendant's reputation."

We are also unable to determine with any degree of certainty whether the court sustained the objection on the sole ground that the proffered testimony was hearsay or whether the court intended to include as an additional reason that the witness did not possess the necessary testimonial qualifications to testify as to the fact of defendant's general reputation. Even if we assume, however, that the court stated the wrong reason (i. e., that the testimony was hearsay—general reputation is hearsay) for excluding the testimony, nevertheless we are of the view that the testimony was properly excluded because, on the record before us, it does not appear that the witness possessed the necessary testimonial qualifications on the fact issue of defendant's general reputation.

As pointed out in Wigmore on Evidence, the common-law rule required that a witness who was offered to testify as to one's reputation must have acquired knowledge thereof based upon his residence in the place of repute and not on mere inquiry: "The admissible reputation is that which is built up in the neighborhood of a man's domicile or in the circle where his livelihood is followed; and it is of slow formation. It is the sum of all that is said or not said for or against him. Consequently, it used to be ruled that a reputation can be adequately learned only by the *witness' residence* in the place, not by a mere visit of inquiry, or by a casual sojourn, or by a conversation with a resident who reports the reputation: * * * How long this residence must have been, or how near to the place of domicile or occupation, was not defined by fixed rule; the qualification varied according to circumstances; and it should be left entirely to the trial Court. But in modern days of organized investigation and research it is easy to see that this original common law rule is too strict. Systematic inquiry by a person coming from outside will often be a better source of knowledge than the casual opportunities of a neighbor or a friend; the only reason for distrust exists when the inquirer is a paid partisan agent who seeks evidence of one purport only." Wigmore on Evidence, 3d Ed., Vol. III, § 692, pp. 18–20. As indicated in the footnotes to the above quotation, most of the courts which have had occasion to pass upon the question whether one engaged for the specific purpose of investigating another's general reputation is qualified to testify based upon knowledge so acquired, have excluded such testimony, usually on the ground that if one's reputation may be attacked through

the process of hiring an investigator, gross abuses would result.

For example, in Young v. Corrigan, D.C. N.D.Ohio 1912, 208 F. 431, 440, the court said:

"A detective was employed by the plaintiff, as the result of an item of testimony offered in defense, to go to the town where the witness in question formerly resided and there make inquiry touching the reputation for truth and veracity of the witness, with a view of qualifying such detective to be a witness on rebuttal in impeachment. This the court refused to permit. As to this, the rule laid down in Wigmore on Evidence, § 692, undoubtedly states the law:

" 'The admissible reputation is that which is built up in the neighborhood of a man's domicile or in the circle where his livelihood is followed, and it is of slow formation. It is the sum of all that is said or not said for or against him. Consequently its tenor can be adequately learned only by a residence in the place, not by a mere visit of inquiry, or by a casual sojourn, or by a conversation with a resident who reports the reputation.'

"The court's refusal to permit this testimony was undoubtedly right. It is not difficult to see the opportunity for gross abuse, if it were permissible to attack reputation through the hiring of investigators."

And in Minkow v. United States, 4 Cir., 5 F.2d 319, 320, the court said: "Another assignment concerns itself with the refusal of the court to permit a Pinkerton detective, aiding the defendants in the preparation of their case, to give the results of an inquiry he had made as to the reputation of a government witness. The ruling below was in strict accord with the law as it has been settled for more than a century. Mawson v. Hartsink, 4 Esp. 102; Douglass v. Toucey [Tousey] 2 Wend. (N.Y.) 354, 20

Am.Dec. 616; Young v. Corrigan (D.C.) 208 F. 431; Wigmore on Evidence, § 692." See also, for examples of the application of the common-law rule excluding such testimony, Tingley v. Times Mirror Co., 151 Cal. 1, 89 P. 1097, 1107, ¶ 9, and Commonwealth v. Baxter, 267 Mass. 591, 166 N.E. 742, 743.

The majority opinion of the Supreme Court of North Carolina in 1923 took the contrary view and held that one who had investigated the general reputation of another was competent to testify as to the reputation of that person in State v. Steen, 185 N.C. 768, 117 S.E. 793. See also the concurring and dissenting opinions in the Steen case. As supporting the admissibility of such reputation testimony by an investigator, see also Rios v. Chand, 130 Cal.App. 2d 833, 280 P.2d 47, 50 [4–6]; Lowe v. State of Texas, 166 Tex.Cr.R. 116, 312 S.W.2d 382, 383 [3]. In 97 C.J.S. Witnesses § 55, p. 444, is the statement, "According to some early authority a witness who went to the former residence of a party to learn his character could not testify as to the result of his inquiries, but this rule is now thought to be too strict."

Our general rule as to reputation witnesses is well stated in State v. Kain, Mo., 330 S.W.2d 842, 846 [8]: "A person possessing the necessary testimonial qualifications, that is, acquaintance with the general reputation of the witness in the neighborhood or among the people with whom the witness associates for the character trait in question, may testify concerning such reputation. State v. De Shon, 334 Mo. 862, 68 S.W.2d 805, 809 [6, 7]; State v. Fairlamb, 121 Mo. 137, 152, 25 S.W. 895, 899; 98 C.J.S. Witnesses § 524, p. 450; 58 Am.Jur., Witnesses §§ 725, 727, 730." Of course, that general statement does not answer the question here, whether the witness in question did or did not possess the necessary testimonial qualifications or, more specifically, whether a witness may acquire the necessary testimonial qualifications solely through inquiry and investigation made for the specific purpose of gaining a knowledge

of one's general reputation, and, if so, whether this record supports the conclusion that the witness Whitfield was so qualified.

In Arnold v. Alton R. Co., 343 Mo. 1049, 124 S.W.2d 1092, the trial court granted plaintiff a new trial because of error in giving instructions and in admitting the testimony of one of defendant's witnesses. That witness was a lawyer who represented a certain union. Arnold, the plaintiff, had, some time prior to his suit against the railroad, sued that union and during the pendency of that litigation, the lawyer made two trips to plaintiff's home town and the vicinity thereabout, making various investigations, and based thereon testified for the defendant that plaintiff's reputation for truth and veracity was bad. In discussing whether the trial court had properly granted a new trial for admitting that testimony, the court pointed out (124 S.W.2d 1096 [11–15]): "Ordinarily the impeaching witness is one who resides in the same neighborhood as the party whose reputation is the subject of inquiry. * * * However, testimonial qualification revolves around the witness' knowledge of the party's general reputation, in turn dependent upon the means and extent of his information rather than his place of residence * * *." And in State v. Higgs, Mo., 259 S.W. 454, 458, defendant objected to a witness testifying concerning the reputation of another on the ground that the one testifying was not acquainted with the other and could not even identify him. The court, in ruling that it was not necessary that the witness be able to identify the party about whose reputation he testified, quoted this from 40 Cyc. 2630: " 'The mere fact that the impeaching witness knows the witness to be impeached does not imply a knowledge of his reputation or render the impeaching witness competent in the absence of such knowledge; and, conversely, the fact that one does not know another personally does not preclude him from testifying to the general reputation of such person for the purpose of impeachment.' "

We again refer to Arnold v. Alton R. Co., supra, 124 S.W.2d 1097. There the court reached this conclusion on the question whether the trial court had properly granted a new trial on the ground that it had erred in admitting the testimony of the lawyer witness who had investigated the reputation of the plaintiff: "General reputation is a fact; and assuming, but not necessarily ruling, that sufficiently detailed and extended inquiry and investigation may impart to one testimonial qualifications on the issue, the trial court should be privileged to exercise some discretion in the matter * * *, and its rulings should not be disturbed in the absence of an abuse thereof * * *." Further, it is well settled that "Reputation cannot be established by the opinion of witnesses as to the character of the defendant. It must be established by proof of the way the community regards the accused, even though such reputation is obviously hearsay. * * * Character witnesses cannot give the results of their own personal experience and observation." Wharton's Criminal Evidence, 12th Ed., Vol. I, § 225, p. 468.

Our review convinces us that we should not and we need not hold that a stranger-investigator may never, under any circumstances, acquire the necessary testimonial qualifications on the fact issue of one's general reputation. On the contrary, we are of the view that an investigation and inquiry made for the specific purpose of discovering one's general reputation, may extend over a sufficient time, be broad enough in scope, and be otherwise conducted in such a manner as to enable the investigator reasonably to arrive at a probatively valuable conclusion as to the manner in which a community regards one. We observe, however, that usually it would be safer practice to adhere to the usual and generally approved procedures in adducing general reputation testimony.

Our holding here is confined to the proposition that upon this record it does not sufficiently appear that the investigation was so conducted as to qualify the witness to testify on the fact issue of defendant's

reputation. It follows that the trial court did not err in excluding the proffered testimony.

 Defendant's assignment 3 is that the trial court erred in refusing to declare a mistrial because of the prosecutor's allegedly improper argument which, defendant says, referred to the presence of members of defendant's family in the courtroom during the trial and to the failure of defendant to have offered those persons as witnesses to support his alibi defense. Counsel's arguments are not in the transcript and, inasmuch as statements contained in a motion for a new trial do not prove themselves, we may not review this allegation of error. State v. Taylor, Mo., 327 S.W.2d 880, 884 [3, 4]. We may observe in passing that, inasmuch as defendant testified that he was at home with some members of his family at the time of the robbery, the argument complained of does not appear to have been improper.

Defendant's final contention is that the trial court erred in failing to instruct "on the presumption of the defendant's good character especially in view of the fact that the court erred in excluding *any* evidence of defendant's character * * *." Defendant did not offer an instruction on good character. We have heretofore ruled that the trial court did not err in excluding defendant's proffered character evidence. But in so far as this contention is concerned, the decisive fact is that there was no evidence in the record on the subject of defendant's good character and, consequently, the trial court was not required to instruct thereon. "Supreme Court Rule 26.02(6) provides that the court shall include an instruction on good character as part of the law of the case 'when necessary.' That means when there is evidence on the subject. State v. Fowler, Mo., 189 S.W.2d 549, 550; State v. Moore, Mo., 303 S.W.2d 60, 70 [14]." State v. Terry, Mo., 325 S.W.2d 1, 8 [18–20].

We have found no error in connection with those matters which we are required to review upon the record before us even though defendant has made no allegation of error as to them.

The judgment is affirmed.

HOLMAN and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.