**UNITED STATES of America,
Appellee,**

v.

**Tommie Lee DUNMORE, Appellant.**

**UNITED STATES of America,
Appellee,**

v.

**Ronald Eugene JOHNSON, Appellant.
Nos. 71–1034, 71–1035.**

United States Court of Appeals,
Eighth Circuit.

Aug. 4, 1971.

Rehearing Denied in No. 71–1034
Aug. 30, 1971.

Ronald M. Sokol, Kansas City, Mo., for Tommie Lee Dunmore.

David W. Shinn, Kansas City, Mo., for Ronald Eugene Johnson.

Bert C. Hurn, U. S. Atty., Constant John Poirier, Asst. U. S. Atty., Kansas City, Mo., for appellee.

Before LAY and HEANEY, Circuit Judges, and EISELE, District Judge.*

HEANEY, Circuit Judge.

Tommie Lee Dunmore and Ronald Eugene Johnson appeal from their convictions, by a jury, of the crime of robbery of the Central State Bank of Kansas City, Missouri, on May 28, 1970. Following trial, defendant Johnson was sentenced to twenty years' imprisonment, and defendant Dunmore to ten years' imprisonment, to be served consecutively with a twenty year sentence on another charge.

On appeal, the defendants allege numerous errors.[1] We consider in detail the three that we feel have substance: (1) that the trial court's comments on the evidence were biased and prejudicial; (2) that the court erroneously permitted the government to impeach and cross-examine its own witness; and (3) that the court used an improper standard in defining reasonable doubt in his charge to the jury.

We find merit in each of these contentions, but conclude that the errors were prejudicial to Johnson alone.

The government relied primarily upon the testimony of Larry Carruthers, an accomplice, to establish its case. Carruthers, a sixteen year old youth, pleaded guilty to the robbery and implicated both Dunmore and Johnson. His testimony, if believed by the jury, was sufficient to convict both defendants.

Carruthers testified: that he carried out the robbery according to a plan that he and the defendants had devised; that he entered the bank armed, masked, and alone; that during the robbery, Johnson was in the bank posing as a customer and that his purpose was to ensure Carruthers' successful escape; that after collecting the money, Carruthers fled from the bank to an appointed location where Dunmore waited with a car; that he entered the trunk of Dunmore's car; that Dunmore then drove to a duplex owned by Johnson's mother, where Johnson lived on the first floor; that Johnson met them at the house and the three men split the money in the upstairs apartment occupied by Johnson's brother and his wife.

Carruthers' credibility was weakened on cross-examination.

The government called other witnesses whose testimony tended to corroborate Carruthers' story as to Dunmore.

Johnson, through members of his family, attempted to establish that the split of money could not have occurred at his brother's apartment, as Carruthers had stated, and that his activities on the day of the robbery indicated his innocence. Johnson also called Sylvia Sydnor, an acquaintance of all three men, who Carruthers alleged was present at some of the planning sessions. She contradicted Carruthers on this and several other points. Through his cross-examination of the government witnesses, Johnson attempted to show that his presence in the bank during the robbery had been innocent.

Dunmore offered no evidence.

We consider the defendants' contentions seriatim.

## TRIAL COURT'S COMMENTS ON THE EVIDENCE

The defendants' attack on the trial court's comments is two-pronged. They contend (1) that the court summarized

---

* Eastern District of Arkansas, sitting by special designation.

1. We have considered each of the defendants' contentions. Aside from the three issues we discuss, we find the contentions to be without merit.

the evidence in a prejudicial manner, and (2) that the court improperly buttressed the credibility of Larry Carruthers.

The essence of the first argument is that the court restated, in detail, the evidence tending to prove the defend-

ants' guilt, yet made no effort to summarize the evidence of their innocence.

We find merit in this contention. The trial court called to the jury's attention most of the evidence offered by the government.[2] Yet, notwithstanding the fact that Johnson had called six witness-

2. The court's summary of the evidence was as follows:

"* * * It's undisputed that Larry Carruthers robbed the bank. It's undisputed that he had a pistol. His testimony is that it was given to him by the Defendant Dunmore, * * *.

"* * * [Carruthers'] testimony is that as he left the bank he * * * ran across the park, * * * two of the officers followed him and they lost him * * *. There is testimony * * * and it's undisputed that there was a white Buick automobile near the place where the—where the chase ended or where he was lost. The undisputed testimony is that that automobile was purchased a short time before the commission of this offense by the Defendant Dunmore * * *—for $100. * * * [H]e purchased the car, and when it was over, Dunmore said he didn't have any money and he let him have two dollars with which to buy gasoline.

"* * * Carruthers' * * * testimony is that he got in the back of this white Buick car, and they went to a certain place and there divided the money. His testimony was that they went into— * * * the apartment belonging to one of the Johnsons.

"The testimony further is that he got * * * $2500 * * * out of it, and that he, in a short time, gave a thousand dollars of it to Dunmore. A few days after that Dunmore and his mother paid twenty-nine hundred- and some-odd dollars for a Thunderbird car. That's not long after Dunmore had borrowed two dollars—two dollars back from the man from whom he had bought the car.

  *       *       *       *       *

"The testimony * * * is that [Dunmore] was arrested * * * the 10th of June * * * by the Federal officer, and that he was driving the Thunderbird, and that he had $234 in his pocket, and that out of that $234 there were four $10 bills that matched the bait money that had been taken from the bank in the robbery of May the 28th, and that he had a $20 bill that also matched the bait money that was taken from the bank on the 28th day of May.

  *       *       *       *       *

"You have heard the testimony with respect to what was done and how these men met and talked about the robbery of the bank, how Dunmore—Carruthers, and how Johnson met and discussed this matter and had a dry run to see how long it would take to run across the park, and that they got into the blue car, five of them, and drove up to the bank, but didn't pull the job that day because a police officer was around.

"Now, these are all—that's the evidence in the case for you to consider. That's the evidence * * * against Dunmore.

"So it's for you * * * to determine where the men came from, how did he come into the possession of the $234 and the four $10 bills, the $20 bill, that were part of the bait—of the marked money of the bait that was taken from the bank, determining whether or not he was an abettor and aided in the development and the plan for the robbery of this bank.

"Now, let's discuss the evidence for a moment with respect to Johnson. The evidence is not so clear, frankly, as to Johnson.

"May I digress here—and I want to caution you very carefully—anything that I say in this case about the facts is not binding upon you because you are the sole judges of what the facts are, and you should not be influenced by that—I simply call it to your attention—I say, my right, to advise you as to the facts.

"I think it's undisputed that Johnson was in the bank when the robbery took place. It's undisputed that they had known each other and that they had been in conference some days before. * * * Carruthers testified that they made the dry run, and at one place he said that he was not quite ready for the job, * * * and that Johnson said, 'Well, I'll do it,' and then Carruthers said, 'No, I'll do it —I'll do the robbery.'

"Now, it's the circumstance for you to determine why was he in the bank opening an account right at the time of the bank robbery? That's one of the facts that the members of the jury might take into consideration in determining whether or not Johnson was a part—was an aider and abettor in this manner, that they had met and discussed the plan be-

es and both defendants had undertaken extensive cross-examination, the court made only brief mention of the evidence adduced by the defense. That mention was negative:

> "[Johnson] has offered testimony here that certain things—that is—the apartment at which he's supposed to have divided the money, that he couldn't have gained access to it because nobody had a key except the owner and the mother. *There's a good deal of discrepancy in this thing.* * * *" (Emphasis added.)

This one-sided recapitulation of the evidence does not meet the standards of impartiality required of a federal judge.

■ While a federal trial judge is permitted to comment on the evidence and witnesses in his instructions to the jury, United States v. DePugh, 434 F.2d 548 (8th Cir. 1970), Kramer v. United States, 408 F.2d 837 (8th Cir. 1969), he must studiously avoid one-sidedness. Quercia v. United States, 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321 (1932). The failure of the judge to cautiously exercise his right to comment may easily result in prejudice to a litigant's rights,

particularly in a criminal case. Ray v. United States, 367 F.2d 258 (8th Cir. 1966), cert. denied 386 U.S. 913, 87 S.Ct. 863, 17 L.Ed.2d 785 (1967).

> "If the testimony is summed up or analyzed, care must be taken to sum up and analyze both sides, and the judge must not become an advocate. It is doubtless difficult at times to visualize the line between fairness and unfairness and between legitimate comment and advocacy. In this case, the court undertook to review what was designated as uncontroverted facts. In doing so, no mention whatever was made of any evidence favorable to the contention of the defendants, although there was such evidence in the record, and at least some of it stood uncontradicted. The charge is replete with repetitions and reiterations of evidence favorable to the Government, with no reference to any ·evidence favorable to the defendants. * * *"

Boatright v. United States, 105 F.2d 737, 739 (8th Cir. 1939). The rule enunciated in *Boatright* has long been the law of this circuit, and it has been followed up to the present time.[3]

---

fore and planned the bank robbery. And, of course, Carruthers testifies that they divided the money.

"Now—Carruthers is a crook. He's an admitted robber. He's 16 years old, and other things. But it's—you can use your good judgment in determining the testimony. He didn't seem to have anything to hold back. He told his story right straight out, answered the questions that were asked him without hesitation, without pulling any punches, or anything of the kind.

"So it's for you to determine, members of the jury, to determine whether or not Johnson was backing this thing and he used his car and he helped to plan this bank robbery, and was a participant in it and aided and abetted. And if you find and believe beyond a reasonable doubt that he was, then it would be your duty to find him * * * guilty.

"On the contrary, if you believe that he did not participate in it, he was not a party to it, it would be your duty to find him not guilty.

"He has offered testimony here that certain things—that is—the apartment at

which he's supposed to have divided the money, that he couldn't have gained access to it because nobody had a key except the owner and the mother. There's a good deal of discrepancy in this thing. You heard the testimony of Rocky—Rocky was a very unwilling witness. She had been, apparently—apparently Dunmore's girl friend, and naturally, she was reluctant to testify, but she did testify, and she brings Johnson into the case, that they all made the run and drove in the car to the bank to look it over.

"There's her testimony, and there's the testimony of Carruthers, and the other facts and circumstances for you to determine."

3. Ray v. United States, 367 F.2d 258 (8th Cir. 1966); Stoneking v. United States, 232 F.2d 385 (8th Cir. 1956); Cook v. United States, 18 F.2d 50 (8th Cir. 1927).

We recognize that our Court has reached an opposite conclusion in cases which, at first glance, appear to be similar. See, for example, Rogers v. United States, 367 F.2d 998 (8th Cir. 1966); Franano

The defendants' second attack on the judge's instructions is that he commented improperly on Carruthers' credibility.

Early in the instructions, the court had properly instructed the jury that the testimony of Carruthers, an accomplice, was to be received with greater caution than that of other witnesses. But the instructions following tended to negate the effect of this proper instruction.

First, with respect to Dunmore, the court reviewed Carruthers' testimony and much of the evidence corroborating Carruthers' version of the robbery. He then went on to a summary of the evidence against Johnson.

In the case of Johnson, however, the court began by stating:

> "Now, let's discuss the evidence for a moment with respect to Johnson. The evidence is not so clear, frankly, as to Johnson."

As a matter of fact, the record discloses that Johnson's conviction depended almost totally upon Carruthers' testimony. Aside from it, there was negligible evidence tending to prove Johnson guilty.[4] It was crucial to the prosecution's case against Johnson, therefore, that the jury believe Carruthers. Carruthers' credibility had been weakened on cross-examination and he had been contradicted by Sylvia Sydnor, one of Johnson's witnesses. He was, moreover, a convicted felon. In this context, the court made the following statement at the end of his summary of Carruthers' testimony:

> "Now—Carruthers is a crook. He's an admitted robber. He's 16 years old, and other things. But it's—you can use your good judgment in determining the testimony. He didn't seem to have anything to hold back. He told his story right straight out, answered the questions that were asked

him without hesitation, without pulling any punches, or anything of the kind."

We find this comment to be error, for the reason that it interfered with the jury's exclusive right to determine the credibility of witnesses and came dangerously close to directing a verdict against Johnson. See, Quercia v. United States, *supra*; United States v. Stroble, 431 F.2d 1273 (6th Cir. 1970); United States v. Johnson, 371 F.2d 800 (3rd Cir. 1967); United States v. Meisch, 370 F.2d 768 (3rd Cir. 1966).

## PREJUDICE TO THE DEFENDANTS

Having concluded that the instructions complained of were erroneous, we must determine whether the error requires reversal. In doing so, we are guided by the standard laid down by the Supreme Court:

> "If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand * * *. But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand."

Kotteakos v. United States, 328 U.S. 750, 764, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946).

---

v. United States, 310 F.2d 533 (8th Cir. 1962). But our careful examination of those cases reveals factors which distinguish them from the case before us.

4. The only evidence to corroborate Carruthers' implication of Johnson was the testimony of Rosalind Clark. For reasons stated hereafter, we consider the bulk of her incriminating testimony to have been the result of improper cross-examination by the prosecutor.

**1220**

Applying this standard to Dunmore, we conclude that his conviction should not be reversed. Evidence from witnesses other than Carruthers established that when Dunmore was arrested, he had bait money from the robbery in his possession. He paid cash for a late model car a short time after the robbery, whereas just prior to the robbery he had not had enough money to purchase gas. Carruthers' thumbprint was found on the inside trunk lid of Dunmore's car. Dunmore's car had been identified by two bank employees as being in the vicinity of the bank immediately after the robbery, and in a location to which Carruthers had fled. Two witnesses had observed Dunmore talking to Carruthers several days prior to the robbery. Thus, we find it difficult to believe that the court's comments on the evidence or on Carruthers' credibility "substantially swayed" the jury's judgment as to Dunmore.

■■ With respect to Johnson, however, the errors were clearly prejudicial. First, Johnson had presented evidence which, if believed, tended to show that he was not involved in the crime. The failure of the court to mention this evidence except in a negative fashion, or to mention Sylvia Sydnor's impeachment of Carruthers, significantly undercut Johnson's defense.

Second, the court's comments on Carruthers' credibility greatly strengthened the prosecution's case against Johnson. It was clear that Johnson's conviction depended almost totally on the credibility of Carruthers. Aside from his testimony, there was no independent corroborating evidence tending to establish Johnson's guilt. Under these circumstances, the court's buttressing of Carruthers' credibility could have only had a prejudicial effect. This is particularly true when the instructions fly in the face of the rule that an accomplice's testimony is to be received cautiously. We are firm in the belief, therefore, that the court's comments had substantial impact upon the jury's judgment with re-

spect to Johnson. Cf., United States v. DePugh, *supra*.

We turn to a consideration of two additional allegations of error. We find that the allegations have merit and that they contributed to an unfair trial for Johnson.

## THE QUESTIONING OF ROSALIND CLARK WITH RESPECT TO PRIOR INCONSISTENT ORAL STATEMENTS

The trial court permitted the government to question its witness, Rosalind Clark, with respect to prior inconsistent statements.

Miss Clark was Dunmore's girlfriend at the time of the robbery. Most of her testimony was elicited through extensive leading by the United States Attorney. She testified that she had driven to the bank with the defendants, Carruthers, and Sylvia Sydnor several days before the robbery. She, along with Johnson and Dunmore, had left the car, walked to the front of the bank and returned to the car. She did not know the purpose of this visit, although she had seen Carruthers with a gun and ski mask, later used in the robbery, in the back seat of the car.

Following this testimony, the United States Attorney asked Miss Clark if she had been present at a conversation, occurring a few days after the robbery, in which Johnson and Dunmore had discussed the robbery. At that point, the defense objected on the grounds that the witness was being led. The objection was overruled and the question was asked a second time. Miss Clark answered in the negative, whereupon the United States Attorney requested permission to examine her as a hostile witness. Permission was granted and a discussion occurred at the bench as to the propriety of the court's ruling. The court adhered to its position.

■ Upon resumption of the examination, the United States Attorney led Miss Clark into admitting that she had earlier made a statement to the United

States Attorney that she had been present at the Johnson-Dunmore discussion of the robbery and that Johnson had accused Dunmore of cheating him out of some of the money.[5]

We think that the court abused its discretion in permitting the government to question Miss Clark with respect to her prior inconsistent statement. The general rule is that a party may not question its own witness with respect to such statements unless it is affirmatively damaged by its witness's testimony. Goings v. United States, 377 F.2d 753 (8th Cir. 1967); Randazzo v. United States, 300 F. 794 (8th Cir. 1924); Bushaw v. United States, 353 F. 2d 477 (9th Cir. 1965), cert. denied, 384 U.S. 921, 86 S.Ct. 1371, 16 L.Ed.2d 441 (1966). It is not sufficient that the witness fail to testify in favor of the party calling him, as he was expected to do. Rather, his testimony must actually aid the opposing party. Testimony which is merely negative in probative effect does not ordinarily entitle the party calling the witness to cross-examine as to prior inconsistent statements, at least in the manner in which it was done here. See, Goings v. United States, *supra*; Randazzo v. United States, *supra*.

Here, Miss Clark's testimony merely indicated that she was not present at a conversation between Johnson and Dunmore. This testimony neither damaged nor aided the government. See, United States v. Miles, 413 F.2d 34 (3rd Cir. 1969).

We would add that the apparent purpose of the examination was not to destroy Miss Clark's credibility, as all her previous testimony had been favorable to the government, but rather to have her prior inconsistent statement serve as substantive proof of the fact that Johnson and Dunmore had discussed the rob-

bery in her presence. See, Ellis v. United States, 138 F.2d 612, 616, 617 (8th Cir. 1943); McCormick on Evidence, Chapter 4, § 39.

## REASONABLE DOUBT INSTRUCTIONS

The trial court instructed the jury on reasonable doubt as follows:

"You are charged that a reasonable doubt [is on which is] based upon reason and which is reasonable in view of all the evidence. If, after an impartial comparison and consideration of all the evidence, you candidly can say that you're not satisfied of the defendants' guilt, you have a reasonable doubt, but if after such impartial comparison and consideration of all the evidence you truthfully can say that you have an abiding conviction of the defendants' guilt, such as you would be willing to act upon in the more weighty and important matters relating to your own affairs, you have no reasonable doubt.

"Putting it another way, a reasonable doubt means a substantial doubt and not the mere possibility of innocence."

The defendants contend that the charge should have been in terms of the kind of doubt which would make a person hesitate to act, as preferred by the Supreme Court, Holland v. United States, 348 U. S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1955), rather than in terms of the kind of doubt on which he would be willing to act. See also, Scurry v. United States, 120 U.S.App.D.C. 374, 347 F.2d 468 (1965), cert. denied, 389 U.S. 883, 88 S. Ct. 139, 19 L.Ed.2d 179 (1967); United States v. Heap, 345 F.2d 170 (2d Cir. 1965); Jones v. United States, 119 U.S. App.D.C. 213, 338 F.2d 553 (1964).

The instruction given by the trial court has been criticized. The District of Columbia Circuit, in pointing out the

---

5. The court gave no instruction to the jury that this statement was to be used for impeachment only, and was not substantive evidence. See, Goings v. United States, 377 F.2d 753 (8th Cir. 1967). No such instruction was requested, however, and in the absence of a request, this Court may not consider this error unless it constituted plain error. Rule 30, Fed.R. Crim.Proc.

**1222**

crucial distinction between mere willingness to act, and hesitation to act, stated:

"Being convinced beyond a reasonable doubt cannot be equated with being 'willing to act * * * in the more weighty and important matters in your own affairs.' A prudent person called upon to act in an important business or family matter would certainly gravely weigh the often neatly balanced considerations and risks tending in both directions. But, in making and acting on a judgment after so doing, such a person would not necessarily be convinced beyond a reasonable doubt that he had made the right judgment. Human experience, unfortunately, is to the contrary.

"The jury, on the other hand, is prohibited from convicting unless it can say that beyond a reasonable doubt the defendant is guilty as charged. Thus there is a substantial difference between a juror's verdict of guilt beyond a reasonable doubt and a person making a judgment in a matter of personal importance to him. To equate the two in the juror's mind is to deny the defendant the benefit of a reasonable doubt."

Scurry v. United States, *supra,* 347 F.2d at 470.

■■ We agree with the District of Columbia Circuit that the definition of reasonable doubt should be phrased in terms of hesitation to act. But no objection was made to this particular instruction, and the use of it does not constitute plain error. See, Rule 30, Fed.R. Crim.Proc.; Holland v. United States, *supra*; Friedman v. United States, 381 F.2d 155 (8th Cir. 1967); Scurry v. United States, *supra.*

The conviction of Tommie Lee Dunmore is affirmed. The conviction of Ronald Eugene Johnson is reversed and the case is remanded for new trial.