**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Kenneth SPINKS, Defendant-Appellant.**

**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Larry LEE, Defendant-Appellant.**

**Nos. 42802, 42836.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Nov. 10, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 16, 1981.

Application to Transfer Denied
Jan. 18, 1982.

Joseph W. Downey, Public Defender, Mary Bennett, Asst. Public Defender, St. Louis, for defendant-appellant in no. 42802.

Curtis C. Crawford, St. Louis, for defendant-appellant in no. 42836.

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, George A. Peach, Circuit Atty., St. Louis, for plaintiff-respondent in both cases.

GUNN, Judge.

Defendants-appellants, Kenneth Spinks and Larry Lee, were jointly tried with Samuel Conley and convicted of attempted first degree robbery.[1] They raise the identical points of alleged error. Therefore, on our own motion we have consolidated the appeals of Spinks and Lee and treat them in this opinion.

---

1. Conley's appeal was heard separately and his conviction upheld in *State v. Conley*, 617 S.W.2d 126 (Mo.App.1981).

Defendants urge the following points of alleged trial court error: (1) failure to declare a mistrial for a prosecutor's comment in argument; (2) the prosecutor's purported impeachment and rehabilitation of a state's witness; (3) introduction of evidence of a separate crime. We affirm.

In mid-evening, William Marland and his girlfriend, Willa Payne, had left their parked auto and were preparing to enter a St. Louis tavern to purchase some beer. They were accosted from behind by two men—identified as Samuel Conley and defendant Lee—announcing a holdup. Lee grabbed Marland's shoulder and shot him in the head. Fortunately, Marland's wound was not fatal, and he observed his assailant's face as he fell to the ground. Ms. Payne ran for aid and described the attackers to police who brought three suspects to her for identification. None of these three had any involvement in the crime, although Ms. Payne erroneously identified one as an attacker. At a later lineup, however, she identified Samuel Conley as having participated in the attack. Marland positively identified defendant Lee as the person who had shot him. Defendant Spinks had remained in the auto during the assault.

The day after the crime, Evelyn Williams reported to police that she had observed Conley and defendants Lee and Spinks involved in the incident.[2] Based on her report, police arrested Conley, Spinks and Lee. Although initially stating that her coign of vantage had been between two parked cars, Ms. Williams later related to police that she had accepted a ride from Conley, Spinks and Lee; that a proposed robbery had been discussed by the three men; that she had remained in the car with Spinks while Conley and Lee made the abortive robbery attempt. After Lee shot Marland, all fled the scene in the car with Spinks driving. Ms. Williams, after being admonished by the three would-be robbers

not to tell of the events, was let out of the car a short time later. Her testimony at trial was consistent with the second version of being in the car with Spinks during the attempted robbery by Conley and Lee.[3]

After asserting the defense of alibi that they were elsewhere, Conley and defendants Spinks and Lee were found guilty by the jury.

The defendants' first point on appeal concerns the following statement of the prosecutor in closing argument:

First of all, from the State's case, if you believe the testimony the State has put on there is no question that that testimony, if you believe it, is sufficient to convict each of these defendants of the crime as charged. If that testimony, if you believe it, were not sufficient to do so, I wouldn't be here talking to you now. The Judge would have stopped the trial—

Objection to the comment was sustained but motion for mistrial was denied. Defendants contend that the remark was misleading and prejudicial, an invasion of the jury's province and an indirect comment attributable to the trial court on the sufficiency on the evidence.

■ We have no doubt that the comment was improper and should not have been made. The trial court was absolutely correct in sustaining objection to the remark. Certainly, any prosecutor is well advised to forebear making a similar comment in closing argument, for under proper circumstances mistrial could be an appropriate remedy. *State v. Williams*, 588 S.W.2d 70, 74 (Mo.App.1979). *See State v. Snider*, 616 S.W.2d 133, 136 (Mo.App.1981). But we find no reversible error in this case by the trial court's refusing to declare a mistrial.

At the outset we observe that the point is scarcely preserved for review, as the motion for new trial treating the issue fails to

---

**2.** Ms. Williams' motive for reporting to police was that her girlfriend's brother had been arrested in error for the crime based on Willa Payne's first misidentification of one of the perpetrators.

**3.** Ms. Williams' reason for altering her location was that she was under the jurisdiction of the Juvenile Court as a runaway at the time of the crime and was concerned that her association with Conley, Spinks and Lee would cause her more trouble.

present it with sufficient specificity and offers only a bare conclusory statement regarding the comment. Hence, the assignment of error, if it is to be considered, will be done under plain error determining whether the defendants' substantial rights have been affected resulting in manifest injustice or a miscarriage of justice. *State v. Ginnery*, 617 S.W.2d 117, 119 (Mo.App. 1981); *State v. Smith*, 612 S.W.2d 895, 897 (Mo.App.1981); Rule 29.12(b). No plain error occurred in this case.

█ The fundamental precept guiding our decision is that it is within the trial court's substantial discretion whether to grant a mistrial. *State v. Purnell*, 621 S.W.2d 277 (Mo.banc 1981); *State v. O'Neal*, 618 S.W.2d 31, 35 (Mo.1981); *State v. Ginnery*, 617 S.W.2d at 120. The reason for this is that the trial court is best placed to observe and evaluate the propriety of the oral argument. *State v. O'Neal*, 618 S.W.2d at 35; *State v. Linder*, 613 S.W.2d 918, 926 (Mo.App.1981). And, as stated in *State v. Strubberg*, 616 S.W.2d 809, 818 (Mo.banc 1981): "[r]arely will an improper closing remark affect the substantial rights of a defendant." So it is that this case does not fit any matrix for an exception of the foregoing stated rule, and we find no abuse of the trial court's discretion in refusing to grant a mistrial after sustaining the objection to the comment.

*State v. Van*, 543 S.W.2d 827, 831 (Mo. App.1976), presents a similar situation with the prosecutor's comment that: "If all four of those elements [of the verdict directing instruction] had not been proven, we would not be at this stage of the case." The trial court sustained the defendant's objection and instructed the jury to disregard the statement but denied a mistrial. We recognize, of course, that in *Van* there was a direction to the jury to disregard the statement and no specific reference was made to the trial court in the statement. But in this case as in *Van* we believe that the trial court reasonably could have concluded that the prosecutor's comment did not prejudice or mislead the jury to conclude that its task of deciding the defendants' guilt or inno-

cence had already been performed by the trial court as complained of by defendants. The prosecutor's statements did not amount to an indirect judicial comment on the sufficiency of the evidence.

Finally, defendants' complaints that the trial court should have taken curative action following the prosecutor's statement by defining "sufficient" and/or instructing the jury to disregard the remarks are without merit, as no such relief was requested at trial. *State v. Cuckovich*, 485 S.W.2d 16, 23–24 (Mo.banc 1972); *State v. Hill*, 614 S.W.2d 744, 752 (Mo.App.1981); *State v. Cox*, 590 S.W.2d 378, 380 (Mo.App.1979).

Defendants next allege trial court error in allowing the prosecutor to conduct the following inquiry of his own witness. On direct examination, after Evelyn Williams described the crime as she had observed it from within the automobile used by defendants, the prosecutor asked her if she had previously related a different version of the story. She admitted that she had originally told police that she had witnessed the incident from between two parked cars. When the prosecutor inquired about her act of dissembling, Ms. Williams responded that she was a runaway, sought by the police, and feared to tell of her association with the defendants. Defendants urge that this interchange constituted impeachment of the state's own witness with a prior inconsistent, extra-judicial statement and rehabilitation.

█ Defendants raise two well established principles to support their contentions: with limited exceptions, a party may not impeach his own witness, [*Jordan v. Robert Half Personnel Agencies of Kansas City, Inc.*, 615 S.W.2d 574, 586 (Mo.App. 1981); *State v. Gatlin*, 539 S.W.2d 731, 733 (Mo.App.1976)]; and, absent impeachment or contradiction of a witness' testimony, prior extra-judicial statements of the witness that are consistent with his testimony are inadmissible as self-serving hearsay [*State v. Williams*, 602 S.W.2d 209, 213 (Mo. App.1980); *State v. Cox*, 542 S.W.2d 40, 48–49 (Mo.App.1976)]. Neither rule applies to this case. Impeachment occurs when a

witness, while testifying, makes a statement inconsistent with a prior extra-judicial statement and the attorney reveals the inconsistency to undermine the witness' credibility. *State v. Davis*, 566 S.W.2d 437, 450 (Mo.banc 1978); *State v. Ivicsics*, 604 S.W.2d 773, 780 (Mo.App.1980). The prosecutor introduced Ms. Williams' prior inconsistent statement not to attack her credibility but to establish it, which, after all is the ultimate goal. This was done by showing she had previously issued a statement consistent with her testimony with respect to naming defendants as the perpetrators of the crime. The prosecutor was simply exposing her inconsistency on direct examination to prevent the defense counsel from dramatically revealing it on cross-examination, hoping thereby to minimize its damaging impact on her credibility. Such trial strategy is not anomalous, and is an accepted practice, *e.g.*, an attorney exposes on direct examination past criminal convictions of his witness or a prosecutor discloses on direct examination the terms of his accomplice witness' plea bargain. *State v. Taylor*, 610 S.W.2d 1, 3 (Mo.1980); *State v. Borden*, 605 S.W.2d 88, 90–91 (Mo.banc 1980). The state may anticipate a possible basis for impeachment and demonstrate it on direct examination. *State v. Borden*, 605 S.W.2d at 91. The defense may, of course, develop it on cross-examination in an effort to enhance the impeaching effect, as did defense counsel here. The trial court committed no error in allowing disclosure of this evidence on direct examination.

■ Defendants contend finally that the trial court erred in admitting evidence of the separate crime of license plate tampering. Evidence was admitted indicating that the license plates on the automobile used in the robbery attempt had been exchanged after the crime with license plates issued to Samuel Conley's automobile. *State v. Conley*, 617 S.W.2d 126 (Mo.App.1981),—Samuel Conley's appeal—directly answers this point, holding that there was no error in the admission of this evidence, as it shows an attempt by the accused to fabricate evidence from which consciousness of guilt may be inferred.

Judgment affirmed.

DOWD, P. J., and SIMON, J., concur.