STATE of Missouri,
Plaintiff-Respondent,

v.

David REILLY, Defendant-Appellant.

No. 65620.

Supreme Court of Missouri,
En Banc.

July 17, 1984.

Rehearing Denied Sept. 11, 1984.

C. John Pleban, St. Louis, for defendant-appellant.

John Ashcroft, Atty. Gen., Janet Papageorge, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

HIGGINS, Judge.

David Reilly was convicted by a jury of stealing property worth in excess of $150, in violation of section 570.030, RSMo 1978. The Court of Appeals, Eastern District, affirmed, holding, among other things, that the trial court did not abuse its discretion when it admitted testimony in rebuttal of defendant's reputation evidence. This Court granted transfer to examine whether the rebuttal testimony of a witness whose inquiry into the defendant's character consisted solely of questions directed to police officers in the area of defendant's residence satisfied the standards for admissibility enunciated in *State v. Cross*, 343 S.W.2d 20, (Mo.1961). Affirmed.

The jury found that the defendant and two others stole a safe from Smith's Truck Stop in Marion County, Missouri. The three divided the money contained therein and then disposed of the safe and its contents. One of the thieves, Doug Perrine, was an employee at the truck stop and ultimately confessed to his part in the theft, at first declaring to police that he had been the sole perpetrator, but later implicating the defendant and the other

participant. At trial, the owner of the safe gave his opinion that the value of the safe exceeded $150. The jury also heard evidence pertaining to the safe's contents prior to the theft.

Appellant charges the trial court erred in permitting Sheriff Harold White to testify in rebuttal that, on the basis of conversations with police officers in Quincy, Illinois, the defendant's reputation for honesty and law abidance was not good. He also charges that Doug Perrine's pretrial statements to police should not have been admitted into evidence because they were consistent with his testimony at trial and were improperly employed to bolster his credibility prior to impeachment; that it was error to permit the safe's owner to testify as to the safe's value; that there was insufficient evidence of value; and that evidence of the safe's contents should not have been received because such was evidence of other crimes.

■ Defendant placed his character in issue by calling two witnesses who testified that his reputation for honesty and law abidance was good. The state adduced rebuttal to this testimony by calling Sheriff White, who testified that he had conducted an investigation of defendant's character and discovered it to be neither law-abiding nor honest. Sheriff White's investigation consisted of conversations with law enforcement officers in defendant's city of residence, Quincy, Illinois. *Cf. U.S. v. Straughan*, 453 F.2d 422, 425 (8th Cir. 1972). Defendant objected to Sheriff White's testimony and moved unsuccessfully for a mistrial. He continues to assert that Sheriff White did not possess the necessary testimonial qualifications, and that the trial court's decision to receive his testimony conflicts with this Court's holding in *State v. Cross*, 343 S.W.2d 20 (Mo.1961).

In *Cross*, a defendant on trial for robbery sought to introduce the testimony of a paid investigator hired by his attorney. The investigator had spent more than a day in defendant's town and had interviewed approximately twenty persons; he stated he had thus acquired knowledge of the

defendant's good reputation for "peace and non-violence." This Court held that the trial court properly excluded the evidence. Noting that an investigation made for the specific purpose of discovering one's general reputation could be probatively valuable if sufficiently extensive in time and scope, the Court determined that upon the record before it the investigation was not "so conducted as to qualify the witness on the fact issue of the defendant's reputation." *Id.* at 24–25.

■ Sheriff White's investigation of defendant's character was less extensive than that of the paid investigator in *Cross*. But, in *Cross*, the defendant's character had not yet been placed in issue; here the defendant introduced evidence of his character as part of his defense. When he placed his character in issue, he exposed himself to evidence designed to rebut his evidence of good character. A defendant has the choice of offering evidence of his reputation, but he does so at some risk, *State v. Burr*, 542 S.W.2d 527, 532 (Mo. App.1976), because the state may introduce evidence suggesting that defendant's witnesses are unfamiliar with defendant's reputation or are untruthful. Facts of prior arrests or rumors of defendant's misconduct may be introduced in good faith to test the credibility of defendant's witnesses. *Id.* at 532.

■ Thus, while it has been held that cross-examination cannot seek to prove by rumor or insinuation that a defendant is guilty of other crimes, *State v. Selle*, 367 S.W.2d 522, 529–530 (Mo.1963), the state is permitted to cast doubt upon a defendant's reputation evidence by introducing evidence of misconduct that impeaches a defense witness' credibility. In this case, in contrast to rumors of misconduct or insinuations of other crimes, the state simply presented through Sheriff White contrary evidence of the defendant's character as perceived by police officers in defendant's community. "It is well known that most police officers have a wide acquaintance among the citizenry in general and the fact that a person is known to a police officer

does not necessarily convey the impression that he has a criminal record." *State v. Pitchford,* 324 S.W.2d 684, 688 (Mo.1959). *See also State v. Knicker,* 424 S.W.2d 605, 608 (Mo.1968). The trial court was therefore within its discretion when it permitted the state to rebut evidence of character, already in issue, with evidence tending to discredit the testimony elicited from the defendant's witnesses. Although Sheriff White's testimony would not have been admissible under *State v. Cross, supra,* as evidence of reputation on direct examination, it was permissible rebuttal of evidence already in issue, and not suggestive of a criminal record or history of misconduct that might be attributed to the defendant.

Appellant contends the trial court erred in admitting the testimony of Doug Perrine. Perrine testified on direct examination that he had previously confessed to both the police and the safe's owner his part in the theft. He stated that when he made those confessions it was his intention to "take the heat" himself; he never intended to turn in his confederates. He stated that when he initially confessed to the deputy sheriff he did not advise him that anyone else had been involved in the crime. Upon further questioning, however, Perrine revealed that he had eventually implicated the defendant in the theft. The defendant objected to this testimony, charging that the state was attempting to bolster testimony with the witness's consistent statements, prior to any attempt to impeach.

■ Although the record suggests that Perrine's statements prior to trial were somewhat equivocal, there were inconsistencies between his pre-trial statements and statements made on direct examination. The state's attempt to elicit these ambiguities was a permissible technique employed to prevent defense counsel from exploiting them during cross-examination. The prosecution may anticipate possible bases for impeachment and expose inconsistencies on direct examination. *State v. Spinks,* 629 S.W.2d 499, 503 (Mo.App. 1981).

■ Appellant alleges the trial court erred in permitting the safe's owner to testify as to the value of the safe. On direct examination the owner stated his opinion that the value of the safe was approximately $250. He then testified on cross-examination that he had noted the catalog price of a comparable safe. The court properly excluded any attempt to testify as to the information in the catalog. The owner's opinion was thus the only evidence of value adduced.

■ The owner of stolen property need not be experienced in valuating such property in order to express an opinion. *State v. Brewer,* 286 S.W.2d 782, 783 (Mo. 1956). And an owner's opinion can be substantial evidence of an item's worth. *State v. Eiland,* 633 S.W.2d 302, 303 (Mo.App. 1982). Because the trial court is in a superior position to assess the probative value and competency of opinion evidence, it enjoys considerable discretion in admitting such evidence. *State v. McGraw,* 571 S.W.2d 802, 804 (Mo.App.1978). There is no indication that the court abused its discretion in admitting the owner's testimony; once admitted, such evidence could have formed the basis for the jury's finding that the value of the item stolen exceeded $150. § 570.030, RSMo 1978. And, this being the only evidence of value, the court was not required to instruct on a lesser included offense.

Appellant asserts the trial court erred in receiving evidence concerning the safe's contents; the court overruled a motion in limine to exclude such evidence, and overruled objections to testimony concerning the safe's contents. Appellant charges the trial court's rulings permitted introduction of evidence of crimes outside the scope of the information.

■ Generally, evidence of other crimes is admissible to prove the specific crime charged when such evidence tends to establish, among other things, a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish

the other. *State v. Reese,* 364 Mo. 1221, 274 S.W.2d 304, 307 (1954). And evidence of offenses proximate to the offense for which a defendant stands trial is admissible if the offenses are so connected in time and circumstances with the charged crime that one cannot be fully proved without proving the other. *State v. King,* 588 S.W.2d 147, 150 (Mo.App.1979). When this defendant stole the safe, he also stole its contents.

The judgment of the trial court is affirmed.

GUNN, BILLINGS and DONNELLY, JJ., concur.

WELLIVER, J., concurs in result.

BLACKMAR, J., dissents in separate opinion filed.

RENDLEN, C.J., dissents and concurs in separate dissenting opinion of BLACKMAR, J.

BLACKMAR, Judge, dissenting.

For the reasons set forth below, I cannot concur in the principal opinion, and therefore would reverse the judgment and remand the case for a new trial.

## I.

The defendant took the stand to deny participation in the crime, asserting that he had been at a dance on the evening of the crime. Defendant's alibi was corroborated by two witnesses. Defendant also exercised his valuable right of calling witnesses who claimed knowledge of his good character.[1] He thus placed the state squarely on its burden of proving the charges beyond a reasonable doubt.

The state, of course, was entitled to rebut the defendant's character evidence by adducing testimony of persons familiar with defendant's reputation in the community in which he was known. It produced no such witnesses. Instead, it propounded the testimony of the Sheriff of Marion County, Missouri, who neither personally knew the defendant, nor had heard of him until he was accused of the crime which is the subject of the present appeal. The sheriff simply got in touch with unnamed police officers in Quincy, Illinois and repeated what they had told him. We are not told whether this contact was in person, by telephone, or by letter.[2]

*State v. Cross,* 343 S.W.2d 20 (Mo.1961) lends support to defendant's assertion of the inadequacy of the sheriff's investigation. There a hired investigator from outside the community who had made a daylong investigation on behalf of the defendant, interviewing more than 20 witnesses, was not allowed to testify as to the defendant's reputation, and this Court upheld the exclusion of that testimony. Here the investigation was much less extensive, as the principal opinion readily concedes.

The principal opinion suggests, however, that standards for receiving character evidence offered by the state to refute the defendant's evidence of good character are not as stringent as those applied to the defendant's initial proffer. I can find no basis in authority for this holding. Simply because the state may introduce evidence to show that the defendant's witnesses do not know as much about him as they claim to know, or that there are verifiable instances of disreputable conduct on the defendant's part which the character witnesses do not know about, or which they appar-

---

**1.** Two witnesses testified that defendant had a "good" reputation in the community for being an honest and law abiding person. One witness stated that his opinion was formed from people that he had talked to who "always had good words for [defendant] and for his ability to do [his] work." The other witness based his opinion of defendant on "seeing [defendant's] coaches and the people [he and defendant] both associate[d] with and the high regard they h[e]ld [defendant] in ...."

**2.** When asked what the defendant's reputation was with respect to honesty in the Quincy community and Adams County, Sheriff White responded that defendant did "not have a reputation of being an honest person." The sheriff also stated that defendant did "not have a good law abiding reputation" in and around the community prior to and subsequent to the offense.

ently look upon with indifference, does not give license for offering the kind of evidence challenged here. The state, indeed, must act in good faith in questioning character witnesses about particular instances of the defendant's misconduct,[3] and may not make use of rumor or conjecture in bad faith. The state must refute the defendant's character evidence by evidence which conforms to normal standards of admissibility.

Sheriff White could not be effectively cross-examined. To ask him about the details of the opinions he received might very probably result in the reception of further unverifiable hearsay information from a person knowing nothing about the details. There would be no opportunity to probe possible bias on the part of the officers who furnished the sheriff information or to inquire about the depth of their knowledge. If the present opinion stands prosecutors will be tempted to rely on telephonic inquiries by local officers, rather than bringing in persons who have knowledge of the facts about the defendant's character. The less the witness knows, the harder it is to challenge him.

The state gains nothing by observing that all character and reputation evidence is essentially hearsay. The testimony must come from one who is in a position to hear. When the witness lacks this opportunity the testimony should be excluded because of the same policy considerations which underlie the general hearsay rule.

I would not foreclose the possibility that a police officer of a community such as Hannibal might claim actual familiarity with the reputation of a person who lived in Quincy, Illinois, approximately 18 miles distant. He might acquire the required familiarity in the course of his official duties. Nor would I accept any suggestion that

police officers are less able to testify about character or reputation than private citizens would be. Sheriff White, however, claimed no knowledge of the defendant's character or reputation other than what the Quincy officers had told him in response to his specific inquiry about the defendant.

It cannot reasonably be argued that the reception of the testimony was harmless. The only eyewitnesses against the defendant were admitted accomplices, whose testimony naturally is suspect.[4] They received lenient treatment when charged with the same theft. Fingerprint evidence described in the prosecutor's opening statement did not materialize. The jury had to decide whether to believe the miscreants who testified for the state, or whether to accept the testimony of the defendant and the witnesses who supported his alibi. The jury's assessment of the defendant's character well might be decisive.

## II.

I believe that the defendant was entitled to an instruction which would have permitted the jury to convict him of the misdemeanor offense of stealing less than $150, rather than the felony of stealing in excess of $150.

The state might have avoided any problems along this line if it had charged defendant with stealing the contents of the safe, containing $500 in cash. The only charge, however, was of stealing the safe itself.

The owner's testimony that the safe had a value of $250 or $260 was properly received in evidence, but the jury did not have to accept this valuation and might be of the opinion that the witness was puffing the value of his property. The state, in

---

3. The purpose of cross-examination of character witnesses is to test the good faith of the witnesses and their knowledge of the individual's reputation. *State v. Hastings,* 477 S.W.2d 108, 113 (Mo.1972); *State v. Curry,* 372 S.W.2d 1, 8 (Mo. 1963); *State v. Selle,* 367 S.W.2d 522, 529 (Mo. 1963); *State v. Harris,* 622 S.W.2d 330, 334 (Mo. App.1981).

4. *United States v. Dunmore,* 446 F.2d 1214, 1220 (8th Cir.1971), *cert. denied,* 404 U.S. 1041, 92 S.Ct. 726, 30 L.Ed.2d 734 (1972); *State v. Merrell,* 263 S.W. 118, 121 (Mo.1924); *State v. Lewis,* 539 S.W.2d 451, 452 (Mo.App.1975).

arguing for the admissibility of the evidence, stated that the jury was entitled to give it such weight as it considered appropriate.[5] The defendant would not be entitled to an acquittal simply because the jury disbelieved or discounted the owner's appraisal, because the safe necessarily had some value and its theft, at the very least, would constitute a misdemeanor. The jury was not told about a verdict which was properly available to it in this case.

The jury treated the defendant leniently, as is shown by its recommending only a six-month sentence.[6] It still branded him a felon, and might not have done so if it had realized that it could assess the same sentence by finding guilt of a misdemeanor.

I recognize the cases holding that the lesser included offense need not be instructed on when there is no genuine issue as to the value of the property.[7] This is not such a case. The state is required to establish value in excess of $150 beyond reasonable doubt. The owner's scanty opinion evidence does not remove this fact issue from the case.

I would reverse and remand for a new trial.

---

**5.** In its brief, the state argues that

The fact that the safe was a gift, the age of the safe, and the fact that [the owner] had no actual knowledge of its true value were all brought to the attention of the jury for their consideration. The appellant offered no contrary evidence to refute [the owner's] alleged erroneous valuation. There was ample evidence presented on the question of the stolen property's value so that the issue was properly before the jury whose function it was to determine the value of that testimony. (citations omitted).

**6.** The defendant undertakes the risk of reconviction of a felony and a longer sentence, if he obtains a new trial.

**7.** *See, e.g., State v. Walters,* 636 S.W.2d 122 (Mo. App.1982); *State v. Thornton,* 557 S.W.2d 1 (Mo. App.1977).