STATE of Missouri, Respondent,

v.

Roy TAYLOR, Appellant.

No. 62064.

Supreme Court of Missouri,
Division No. 1.

Dec. 15, 1980.

Rehearing Denied Jan. 13, 1981.

Philip H. Schwarz, Kansas City, for appellant.

Suzanne M. Boersig, Asst. Atty. Gen., Jefferson City, for respondent.

WELBORN, Commissioner.

Roy Taylor was found guilty of murder in the second degree by a jury in the Jackson County Circuit Court. Acting under the second offender law, the court sentenced the defendant to life imprisonment. This appeal followed.

On the evening of November 8, 1978, appellant Roy Taylor appeared at the apartment of Robert Saunders and told Saunders he wanted to get some "dope." A tele-

phone call was made to Dennis Summers who lived at 2403 College in Kansas City. In the course of the conversation, Taylor talked to Barbara Wynne and asked her to leave Summers' place and spend the night with him. Barbara apparently refused the request and Taylor became angry and told her that he would be at Summers' house shortly to pick her up.

Taylor asked Saunders to go with him and Saunders did so. On the way to Summers' house, Taylor stopped at another house and asked Saunders to go in and get a gun for him. Saunders did so and obtained a shotgun and one shell which Saunders took to Taylor's car.

At around 9:30 or 10:00, they arrived at Summers' house. Taylor got out and went to the front porch of the house. Then he called for Barbara to come out but she did not do so. Taylor talked to someone in the house, but Saunders could hear only Taylor's demand for Barbara to come out. After 10 or 15 minutes, Taylor backed away from the front door and fired the shotgun into the door.

Taylor and Saunders then drove to the house of Melvin Witt, an acquaintance. Taylor carried the shotgun as Witt admitted them. Another call was made to the Summers house. Taylor argued with Summers about not putting Barbara out. He told Summers they were coming back over there and that if he didn't put Barbara out he was going to take her by force. Saunders then got on the phone and talked to a William Kelly and told him that "this was war" and that they were coming back to the Summers place. Taylor got back on the phone for a few more words and then hung up.

Taylor asked Saunders if he knew where they could get another gun. Saunders made a phone call and arranged to obtain a gun. When they left Witt's house, Taylor told Witt: "Little brother, you can't go with us this time. * * * There might be some trouble, some serious trouble, or someone might get hurt, and I prefer you not to be with us."

Taylor and Saunders then got a .22 caliber automatic rifle and a box of shells. Taylor loaded the rifle, placed it in the rear of his car along with the shotgun and they returned to the Summers residence.

After parking the car, Taylor "rushed out," carrying the shotgun with one hand in the trigger area and one on the barrel. Saunders remained in the car. He heard some conversation and then Taylor said, "Well, come on with it (expletives), come on with it." At that shooting began. Saunders could not say whether the shotgun was fired.

Taylor fell to one knee and called out: "Oh, I am shot, Robert help me." Saunders got out of the car with the rifle. He saw two people on the porch. One was kneeling, aiming a pistol at Taylor. The pistol misfired and he ran. The other moved against the side of the house, firing a weapon. Saunders kept firing his rifle and then the firing stopped. Taylor went over to where one man lay, hit him in the head with the shotgun and took a pistol from him.

Taylor and Saunders returned to their auto and left. Within an hour, they left town and ultimately were apprehended in Gary, Indiana.

Police were called to the Summers house. They found the body of Eugene Glover on the sidewalk. An autopsy revealed eight entrance gunshot wounds in his body. None of the wounds were from a shotgun blast. Four spent .22 caliber bullets and other bullet fragments were found at the scene.

Taylor and Saunders were separately charged with second degree murder in Glover's death. Saunders testified for the state at Taylor's trial. All of the evidence as to the occurrence at the Summers residence came from him. Melvin Witt also testified to the visit to his house and other witnesses were investigating officers and the medical examiner who performed the autopsy on Glover. The defendant offered no evidence.

The defense theory, submitted by an instruction in the form of MAI–CR 2.40 on justifiable homicide was that the killing of Glover by Saunders was justified because of the threat to Taylor's life.

The jury found Taylor guilty of murder in the second degree. After his motion for new trial had been overruled, the court, having found the second offender act applicable, sentenced Taylor to life imprisonment.

On this appeal, the first assignment of error is based upon the trial court's overruling of objections to the prosecutor stating in his opening statement that Saunders had "pled guilty to this charge" and would receive a 15-year sentence and to Saunders' testimony on direct examination by the prosecutor that he had pled guilty to second degree murder in Glover's death and that he was promised that for his cooperation with the state on Taylor's trial, the prosecutor would recommend that he be sentenced to 15 years' imprisonment outside the State of Missouri.

Objection to the opening statement and to the interrogation at trial was on the grounds that the matter was "irrelevant and immaterial," not relevant to the issues in this case. All objections were overruled.

In this Court, appellant has expanded his grounds of objection, charging that the matters objected to were prejudicial to appellant "and irrelevant to the issue of appellant's guilt or innocence for the reason that it implanted in the jury's mind the guilt of the appellant by association with Saunders, it interfered with the appellant's right to have a trial on the merits concerning his own guilt and it tainted the presumption of innocence which is guaranteed to the appellant under federal and state constitutions." Had these been the objections voiced at the trial, the authorities relied upon by appellant would have to be examined.

However, the only objections at the trial were on the grounds of relevancy and materiality. The disposition of the charge against the witness was relevant and material upon his credibility. *State v. Brooks*, 513 S.W.2d 168, 173–174[9, 10] (Mo. App.1973); *State v. Neal*, 526 S.W.2d 898, 901[1–4] (Mo.App.1975). Therefore, the trial court cannot be charged with error on the basis of overruling the only objection presented to it. The matter is not one calling for relief under the plain error rule. Rule 29.12(b). *State v. Borden*, 605 S.W.2d 88, 91 (Mo.banc 1980).

Appellant's second complaint is against the instruction which submitted the defense of justifiable homicide. The instruction given was in the form of MAI–CR 2.40— Justifiable homicide. That instruction is premised upon a defendant's actions in his own defense. Appellant contends that when, as in this case, the claim is action by another in defense of the defendant, the instruction should have been modified to make it applicable to such situation.

It was contemplated that MAI–CR 2.40 should have been modified in cases involving action in the defense of another. See Richardson, "Self-Defense: 'Perfect' and 'Imperfect' in Homicide," p. 61, Missouri Bar Committee Comments on MAI–CR (1974). Modification would appear to have been in order in the situation of this case. It is questionable whether coupling of MAI–CR 2.10 on responsibility for the conduct of others, the instruction which preceded 2.40 in this case, adequately presents the issue tendered in this case.

However, any defect in the submission becomes harmless error if the defendant was not entitled to receive it in any event. "The general principle that the right to defend another person and kill, if necessary, in such defense depends upon the right of that other person to defend himself, leads logically to the abstract general rule that one cannot justify a homicide upon the grounds of its necessity in defense of life or safety of another when, under the doctrine of justifiable homicide, such other person could not, by reason of having provoked the encounter, have asserted self-defense." 40 Am.Jur.2d Homicide, § 172, p. 458 (1968).

**4**

In other words, appellant was not entitled to a defense that Saunders was acting in his defense in killing Glover unless, had appellant himself done the killing, he would have been entitled to rely upon the defense of justifiable homicide.

One of the conditions of the right to rely upon self-defense is that the person relying upon the defense not have provoked the use of force against himself. MAI–CR 2.40. *State v. Spencer* 307 S.W.2d 440, 443–444[2, 3], [4] (Mo.1957). Here the uncontroverted evidence was that appellant had fired a shotgun blast through the door of the Summers house. After voicing a threat to kidnap Barbara, he returned to the Summers house, first having obtained an additional weapon. He entered the Summers property carrying a shotgun. In these circumstances, the appellant, having provoked the use of force, could not have relied upon self-defense had he killed his assailant. Therefore, he could not rely upon Saunders coming to his defense and any error in the submission of that defense was harmless.

Judgment affirmed.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the court.

All of the Judges concur.