STATE of Missouri, Respondent,

v.

William FINCHER, Appellant.

No. WD 33007.

Missouri Court of Appeals, Western District.

May 17, 1983.

As Modified June 28, 1983.

Application to Transfer Denied Aug. 16, 1983.

John Kurtz of Popham, Conway, Sweeny, Fremont & Bundschu, P.C., Kansas City, for appellant.

John Ashcroft, Atty. Gen., Theodore A. Bruce, Asst. Atty. Gen., Jefferson City, for respondent.

Before SOMERVILLE, C.J., and SHAN-GLER and MANFORD, JJ.

MANFORD, Judge.

This is a direct appeal from a judgment entered in accordance with a jury conviction and sentence of 25 years for murder, second degree (§ 565.004, RSMo 1978). Jurisdiction is vested in this court. Mo. Const. Art. V, § 3, as amended 1979. The judgment is affirmed.

Appellant presents four points[1] on appeal, which in summary charge the trial court erred: (1) in refusing to instruct the jury on self defense; (2) in excluding proffered medical evidence; (3) in failing to properly instruct the jury on the issue of punishment, and in failing to provide proper verdict forms; and (4) in sentencing appellant to a term of incarceration specified to be consecutive to a term presently being served in the state of Kansas.

There is no challenge to the sufficiency of the evidence. A brief summary of pertinent facts suffices.

On October 16, 1979, the victim, Carl Shoemaker, and his wife were visiting some friends at the latter's trailer home. The victim had secured a job that day, and the four individuals were drinking and celebrating. The four were outside talking, when about 10:00 p.m. appellant, who lived in the next trailer, arrived, parked his automobile, and went into his own trailer. A minute or so later, appellant came out of his trailer and got into his automobile. As appellant started to drive away, the victim and his wife were arguing. Appellant stopped his automobile, got out, and walked around his automobile toward the victim and the others. Appellant had a handgun in his hand and asked the victim and the others what their problem was. The victim had been seated on the fender of a parked automobile. The victim got off the fender and walked to where his wife was standing. Appellant fired a shot into the ground. The victim's wife stated that the gun was for blanks or words to that effect. Appellant raised the gun and shot the victim in the chest. The bullet passed through the victim and struck the victim's wife in the arm. The victim fell to the ground. Appellant drove away in his automobile at a high rate of speed.

On October 26, 1979, appellant was interviewed by a detective. After being given his *Miranda* warning, appellant made an oral statement to the detective. In summary, appellant told the detective that about 5:30 p.m., appellant, with his son and girl friend, left his trailer and while leaving, the victim cursed him and made an obscene gesture at appellant. Appellant told the detective this had humiliated him, and that he, his son and girl friend proceeded to dinner and to a movie. Appellant further told the detective that he had decided to stay at a motel that evening because of the earlier events. Appellant then stated he returned to his trailer to get clothing and his handgun. According to appellant, as he returned to his automobile, he heard an argument from the trailer next to his. Appellant stated he then drove his automobile to the trailer next to his and exited his automobile with his gun in his hand. Appellant inquired why the victim and the others were harassing him. Appellant then stated to the detective that the victim got off the car upon which he was seated and walked around that car. Appellant stated he shot at the victim's legs, then shot again, saw the victim fall, and heard the victim's wife say she was also shot. Appellant then stated he left and that he did it because he (appellant) had been cheated and humiliated by people for two years and was tired of it. Appellant also disclosed to the detective that he had never seen the victim before and that the victim made no violent gestures toward appellant. Appellant stated further that after he fired the first shot, the victim raised his arms with his fists closed. Appellant did not testify at trial, but the above evidence was introduced via the testimony of the officer.

The jury returned its verdict. Judgment was entered and after the overruling of

---

**1.** In his brief, appellant had presented five points, but upon oral argument, withdrew one of his points from consideration.

timely filed after-trial motions, this appeal followed.

Under his first point, appellant charges that the trial court erred upon its refusal to submit an instruction to the jury upon self-defense. Appellant points out such instruction is mandatory *whenever there is evidence to support it, State v. Peoples,* 621 S.W.2d 324 (Mo.App.1981); *State v. Carter,* 585 S.W.2d 215, 219 (Mo.App.1979); and Rule 28.02(a); and failure to instruct is reversible error. *State v. Boyd,* 498 S.W.2d 532, 534 (Mo.1973).

Before resolving appellant's precise point, it needs to be mentioned that appellant offered no direct evidence in support of his defense. All of the evidence referenced above regarding appellant's account of events was introduced by way of testimony of a state's witness.

Appellant draws attention to § 563.031, RSMo 1978, which under our Criminal Code, is a codification of the law of self-defense. That statute provides:

"563.031. *Use of force in defense of persons.*—1. A person may, subject to the provisions of subsection 2, use physical force upon another person when and to the extent he reasonably believes such to be necessary to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful force by such other person, unless:

(1) The actor was the initial aggressor; except that in such case his use of force is nevertheless justifiable provided

(a) He has withdrawn from the encounter and effectively communicated such withdrawal to such other person but the latter persists in continuing the incident by the use or threatened use of unlawful force; or

(b) He is a law enforcement officer and as such is an aggressor pursuant to section 563.046; or

(c) The aggressor is justified under some other provision of this chapter or other provision of law;

(2) Under the circumstances as the actor reasonably believes them to be, the person whom he seeks to protect would not be justified in using such protective force.

2. A person may not use deadly force upon another person under the circumstances specified in subsection 1 unless he reasonably believes that such deadly force is necessary to protect himself or another against death, serious physical injury, rape, sodomy or kidnapping.

3. The justification afforded by this section extends to the use of physical restraint as protective force provided that the actor takes all reasonable measures to terminate the restraint as soon as it is reasonable to do so.

4. The defendant shall have the burden of injecting the issue of justification under this section."

█ It is noted that under 4 above, the defendant bears the burden of injecting the issue under the statute. In the instant case, during the oral argument, discussion centered upon whether a defendant must "inject the issue" by direct defense evidence in order to comply with the statute, or whether a defendant has satisfied his burden of "injecting the issue" if evidence on the issue of self-defense is produced from any source, including evidence produced by the prosecution. Pre-Code authority has recognized the viability of the issue of self defense, regardless of the source of the evidence on the issue. *State v. Grier,* 609 S.W.2d 201, 203 (Mo.App.1980); *State v. Thornton,* 532 S.W.2d 37, 42 (Mo.App.1975); and *State v. Blair,* 531 S.W.2d 755, 760 (Mo.App.1975). The question remains whether with the adoption of the Criminal Code in 1978, this rule was changed. This court concludes it was not. In § 556.051(1), the following is found:

"556.051. *Burden of injecting the issue*

When the phrase *'The defendant shall have the burden of injecting the issue'* is used in the code, it means

(1) The issue referred to is not submitted to the trier of fact unless supported by evidence; * * *"

Further, in § 556.061(2), the following is found:

"556.061. *Code definitions.*—In this code, unless the context requires a different definition, the following shall apply: * * *

(2) *'Burden of injecting the issue'* has the meaning specified in section 556.051." *See also* § 556.031, RSMo 1978.

It is noted from the analysis and provisions of *The New Missouri Criminal Code: A Manual for Court Related Personnel,* "Preliminary Provisions", § 1.11—Burden of Injecting the Issue, p. 1–7: "[I]t does not matter which side actually produces the evidence or from whose witnesses it comes. The question is whether or not there is evidence supporting the issue in the case. If there is not, then the issue is not in the case and the party with that 'risk' in effect loses on that issue."

With the foregoing as background principle, certain conclusions can be drawn. First, an accused can meet his "burden of injecting the issue" of self-defense under the statute if evidence thereof is introduced from whatever source and an accused is not deprived of such defense upon his failure to introduce direct evidence by way of evidence for the defense. Secondly, there must be evidence introduced, from whatever source, to support the issue. Thirdly, if there is evidence to support the issue, the burden rests upon the prosecution to prove beyond a reasonable doubt that the homicide was not justified. An accused bears no burden of proof on the issue of self-defense, but merely bears the burden of "injecting" the issue into the case from whatever evidentiary source.

The foregoing should not be misconstrued in any manner as a modification of the requirement that there be evidence to support the issue or in any manner as an alteration of the prosecution's burden of proof; rather, the discussion and conclusion reached herein are to resolve the question how an accused may meet his burden of "injecting the issue", that is, from what source of evidence in compliance with the statute.

In the instant case, appellant contends that the trial court erred in its refusal to submit an instruction on self-defense. Appellant has carried his argument one step further in the process. This further step is based upon appellant's initial conclusion that there was evidence introduced to support the issue of self-defense. Appellant does not quarrel with the requirement that before an instruction is submitted on the issue, there must be evidence to support it.

With appellant's conclusion, review of the matter becomes focused upon the evidence upon this record and the general principles applicable to the self-defense issue. Appellant cites *State v. McQueen,* 431 S.W.2d 445, 448–449 (Mo.1968) wherein our state Supreme Court, in considering the quantum of proof necessary to support or require the giving of an instruction on self-defense, declared:

"This quantum of proof has been variously defined as 'substantial evidence,' *State v. Rose,* Mo., 346 S.W.2d 54; *State v. Baker,* Mo., 277 S.W.2d 627; *State v. Singleton,* Mo., 77 S.W.2d 80; 'evidence putting it in issue,' *State v. Ford,* 344 Mo. 1219, 130 S.W.2d 635; 'any theory of innocence * * * however improbable that theory may seem, so long as the most favorable construction of the evidence supports it,' *State v. Kinard,* Mo., 245 S.W.2d 890; 'supported by evidence,' *State v. Robinson,* supra [Mo., 328 S.W.2d 667]; 'any theory of the case which his evidence tended to establish,' *State v. Stallings,* 326 Mo. 1037, 33 S.W.2d 914; 'established defense,' *State v. Sumpter,* Mo., 184 S.W.2d 1005; and 'evidence to support the theory,' *State v. Shiles,* Mo., 188 S.W.2d 7."

Before considering the evidence upon this record, a brief recital of the principles applicable to the self-defense issue is provided. These principles have repeatedly been declared by our courts, and in a recent decision it was held:

"To support the plea of justification, there must be evidence that (1) the defendant was not the aggressor and did

not provoke the use of force against himself, (2) there was a real or apparently real necessity to kill to save himself from an immediate danger of serious bodily harm or death, (3) the defendant had reasonable cause for such belief, and (4) the defendant did all within his power consistent with personal safety to avoid the danger and the necessity to take life, even to the point of retreat." *Grier* at 203.

Appellant contends that the following evidence provided the quantum of proof necessary to support the giving of his tendered self-defense instruction. Appellant told the detective that the victim cursed appellant from a neighboring trailer and then cursed him again, along with making an obscene gesture and uttering profanities toward appellant in the presence of appellant's son and girl friend. The victim was known to have been involved in a fight with his wife's former in-laws. This fight occurred anywhere from six to eight hours earlier in the day and involved persons unknown to appellant. Appellant was not at the location of this earlier altercation. Appellant suggests that this earlier fight was evidence of the victim's belligerent attitude. Appellant further contends that he got out of his automobile with his handgun flat in his hand and asked the victim why he and the others were bothering him and asked them to leave him alone. Appellant then discloses that the victim came toward him with raised arms and closed fists after the first "warning shot." The evidence reveals that a warning shot was fired and someone (presumably the victim's wife) yelled that it was a blank gun. Appellant then suggests that this exclamation about a blank gun is consistent with appellant's contention that the victim continued his advance toward appellant. Appellant acknowledges that this contention rests upon a two-pronged assumption, to wit, that the victim heard the exclamation and believed the gun to be blank. From this, appellant argues his entitlement to a self-defense instruction.

■ Appellant's evidence goes wanting in various respects, thus preventing it from attaining the quantum of necessary proof. The evidence, including appellant's own statement, reveals that appellant was the initial aggresor. "One of the conditions of the right to rely upon self-defense is that the person relying upon the defense not have provoked the use of force against himself." *State v. Taylor,* 610 S.W.2d 1, 4 (Mo.1980); *State v. Grier, supra; State v. Bainter,* 608 S.W.2d 429, 432 (Mo.App.1980); and *State v. Ivicsics,* 604 S.W.2d 773, 776 (Mo.App.1980). Taking appellant's evidence in the most favorable posture for appellant, the *only evidence* of any aggression by the victim was that the victim raised his arms with closed fists. This gesture occurred after the first so-called warning shot. In addition, the evidence reveals that this "gesture" was at a distance from appellant, not having placed appellant in any position of being struck by the victim.

Assuming again that the victim made the "gesture", the evidence reveals that appellant, as noted, was the initial aggressor and appellant at no time made any effort to withdraw. It has been declared, "The aggressor who provokes the difficulty cannot invoke the defense unless he has in good faith withdrawn from the combat." *Bainter* at 432.

There is no evidence upon this record that appellant was threatened with death or serious physical injury, or that it was necessary to employ deadly force to overcome any perceived harm. *Grier, supra.* The only evidence of any action by the victim was his having alighted from the fender of a parked automobile, his walking toward appellant, his stopping when the "warning shot" was fired and the subsequent raising of his arms with his fists closed. "Self defense grants a defender the privilege to use deadly force in the effort to defend himself against personal harm threatened by the unlawful act of another, if the defender has reasonable cause to believe that (1) there is immediate danger the threatened harm will occur, (2) the harm threatened is death or serious bodily injury and (3) deadly force is necessary to overcome

the harm as reasonably perceived." *Ivicsics* at 776.

In addition to a lack of evidence that appellant was threatened by the unlawful act of another, the threatened harm consisting of death or serious bodily harm, the evidence is further lacking in ever establishing or placing appellant in the role as a defender. After the warning shot, the victim raised his arms with closed fists, continued his advance toward appellant, and then appellant shot the victim. There is no evidence showing that appellant withdrew as the aggressor herein and by any circumstances was then cast in the role as defender. When the evidence is viewed most favorably for appellant, the most which can be observed is that the victim, following the warning shot, raised his arms with closed fists and was shot by appellant. The victim was not armed. "Self defense does not grant the defender the privilege to use deadly force against an obviously nondeadly attack." *Ivicsics* at 776; *State v. Brown*, 502 S.W.2d 295, 299 (Mo.1973) cert. denied, 416 U.S. 973, 94 S.Ct. 1999, 40 L.Ed.2d 562 (1974) and *State v. Stubenrouch*, 591 S.W.2d 42, 46 (Mo.App.1979).

On a final note, under his point (1), appellant contends that evidence of the victim's altercation earlier in the day was evidence of the victim's belligerent attitude. It is to be noted that this "earlier altercation" occurred at a different location than where the victim was shot by appellant. The parties involved in the "earlier altercation" did not include appellant. Appellant did not even know the victim, the other three persons at the scene of this shooting, or any of the persons involved in the "earlier altercation." This earlier altercation was a domestic dispute between the victim and his wife's former in-laws. It occurred some six to eight hours prior to appellant's shooting of the victim.

Aside from the suggestion that the victim's belligerence "can be inferred from the evidence of his already having been in one fight that day and his arguing with his wife", appellant suggests nothing more as to how that evidence alone suffices to support an instruction on self-defense. There is serious question as to whether evidence of the "earlier altercation" was admissible since it was evidence of specific acts by the victim relative to the victim's reputation and nature. *Ivicsics* at 781; *State v. Baker*, 626 S.W.2d 680, 681–682 (Mo.App.1981). Nonetheless, evidence of the "earlier altercation" was admitted and the question remains as to whether that evidence suffices to entitle appellant to a self-defense instruction. This court cannot agree with appellant's suggestion that the victim's belligerence (at the time he encountered and was shot by appellant) can be inferred from the victim's having argued with his wife and the victim's having been involved in an "earlier altercation" with his wife's former in-laws. There is insufficient evidence upon this record to support such an inference.

As noted above, the evidence upon the issue of self-defense was properly admissible through the testimony of the detective witness, who in turn testified to appellant's oral statement and from which the "evidence" of self-defense was disclosed, for the purpose of and in satisfying appellant's "burden of injecting the issue" as required by §§ 563.031, 556.051, and 556.061(2).

■ The mere "injecting the issue" does not suffice, however, for the purpose of submission of an instruction on self-defense. Submission of such an instruction must still rest upon the necessary quantum of proof. *McQueen, supra.*

Appellant's evidence simply is insufficient to support the requested instruction. Such evidence fails to meet the principles and standards declared in *McQueen, Grier, Bainter, Taylor* and *Ivicsics, supra.* There is no merit to appellant's point (1) and it is ruled against him.

■ Under his point (2), appellant charges that the trial court erred in excluding proposed medical testimony. Appellant makes the bare assertion that the offered medical evidence was relevant to the issue of self-defense, but fails to point out to this court either the details of that evidence or

its relevancy. From the record, it is apparent that the evidence related to a medical (mental as compared with physical) problem, including mental treatment several years prior to October 16, 1979. Concerning the medical evidence, appellant sought to have a physician testify that he was currently treating appellant for discomfort from a spider bite on his penis. In addition, appellant sought to have a psychiatrist testify as to his emotional state in 1974. Appellant failed to establish the relevancy of this evidence.

■ Upon review, this court also fails to see how such offered evidence was in any manner related to the issue of self-defense. Keeping in mind under point (1) above that it has been determined appellant, under the facts and circumstances herein, was not entitled to the submission of an instruction on self-defense, this offered evidence takes on even less significance. The trial court has broad discretion as regards the relevancy and materiality of evidence. *State v. Holmes,* 609 S.W.2d 132, 136 (Mo.banc 1980); *State v. Taylor,* 589 S.W.2d 302, 303 (Mo.banc 1979); and *State v. Wickizer,* 583 S.W.2d 519, 524 (Mo.banc 1979). While appellant contends that the trial court's action was a manifest injustice and a miscarriage of justice and thus makes a faint expression of plain error, this court, upon review of the matter, finds that the trial court did not abuse its discretion and there was no error, plain or otherwise.

Point (2) is found to be without merit and is ruled against appellant.

Under his point (3), appellant contends that the trial court erred in failing to instruct the jury upon the issue of punishment and in failing to provide proper verdict forms because MAI–CR2d 15.50 must be read immediately after MAI–CR2d 15.30 and 15.56.

Appellant's argument under this point is bifurcated. In the first portion, appellant complains that the jury was allowed to commence deliberations without the court having instructed the jury pursuant to MAI–CR2d 15.50. Appellant does not contend that MAI–CR2d 15.50 was never given.

What occurred is that the court had instructed the jury under MAI–CR2d 15.30 and the jury proceeded toward the jury room. It was then brought to the court's attention that MAI–CR2d 15.50 had not been submitted. The jury was recalled to the courtroom and MAI–CR2d 15.50 read. Appellant contends that failure to read MAI–CR2d 15.50 immediately after MAI–CR2d 15.30 (see Notes on Use MAI–CR2d 15.50) violated the requirements of MAI–CR2d and was inherently prejudicial. In addition, appellant contends that the jury commenced deliberation without the benefit of MAI–CR2d 15.50, hence the issue of punishment was under deliberation without the benefit of MAI–CR2d 15.50.

Although appellant has not properly complied with the rules and has failed to properly preserve this issue upon failure to set forth the challenged instruction, *State v. Tierney,* 584 S.W.2d 618, 625 (Mo.App.1979); *State v. Netzer,* 579 S.W.2d 170, 174 (Mo. App.1979); and Rule 84.04(e), this court takes up the issue ex gratia.

■ The record reveals that the jury left the courtroom and was recalled within a lapse time of two minutes. The bailiff that accompanied the jury testified and both parties were asked if they desired to present further argument to the jury. Both sides declined. Appellant's assertion that MAI–CR2d 15.50 was not read immediately after MAI–CR2d 15.30 in light of the facts and circumstances is a hyper-technical challenge. To be sure, MAI–CR2d 15.50 was read in proper sequence to MAI–CR2d 15.30, the only question being whether a lapse time of two minutes prevented the reading of MAI–CR2d 15.50 from being immediately read after MAI–CR2d 15.30. This court concludes that the two minute lapse did not prevent MAI–CR2d 15.50 from being read immediately after MAI–CR2d 15.30 under the facts and circumstances herein.

■ As to appellant's contention that the jury commenced its deliberations without the benefit of MAI–CR2d 15.50, the record fails to support this conclusion. There is

absolutely no evidence to support such a conclusion or any reference of such. The mere two minute time lapse all but eliminates this contention, but the evidence shows that the jury had not entered into deliberations before being recalled by the trial court. Appellant offered no evidence on the question, but if he was possessed of such evidence, the same should have been presented. *State v. McClain,* 602 S.W.2d 458, 459 (Mo.App.1980) and *Jackson v. State,* 514 S.W.2d 532, 533 (Mo.1974). The record reveals as required, MAI–CR2d 15.50 was read to the jury. The two minute time lapse (particularly under the facts and circumstances as revealed by the record herein) did not prevent the reading of MAI–CR2d 15.50 immediately after MAI–CR2d 15.30 as contemplated within MAI–CR2d. There was no prejudice to appellant shown. The first portion of appellant's point (3) is meritless.

Appellant's remaining contention under point (3) is that the verdict form relative to guilt or innocence had no place for signature by the jury form. It is noted that this point is also not properly preserved for failure to raise it in the motion for new trial, *State v. Harris,* 620 S.W.2d 349, 354 (Mo. banc 1981), but this court ex gratia reviews the same only for plain error.

■ Upon that form, the jury returned its verdict: "We the jury, having found the defendant guilty of murder in the second degree of Carl L. Shoemaker, are unable to agree upon punishment." The verdict form regarding punishment did provide a place for the signature of the jury form. The record reveals that this form was signed. Appellant contends that the failure to provide a place for a signature on the first form resulted in confusion by the jury to his prejudice. He contends that the series of events which were "confusing" permitted the jury to "redeliberate" its decision on the issue of his guilt. The record dispels appellant's contention. The jury had rendered its decision on appellant's guilt. There is nothing upon this record which intimates that the jury "redeliberated" appellant's guilt. As suggested by respondent, had

such "redeliberation" occurred, it could only have inured to appellant's benefit, not his detriment or prejudice. As a closing note, it is determined that neither MAI–CR2d 15.56 nor the Notes on Use mandate any space for signature. In fact, both the instruction and the Notes on Use direct that no signature line is to be provided.

There is no error, plain or otherwise, under this allegation. Appellant's point (3) is meritless and is ruled against him.

Under his final point (4), appellant charges that the trial court erred upon sentencing him to a term of incarceration specified to be consecutive to a term presently being served by him in the state of Kansas.

Appellant notes that the trial court had the following typed into its judgment of sentence: "to run consecutive to a term of armed robbery defendant is now serving in the State of Kansas".

The foregoing judgment entry cited *State v. Toliver,* 544 S.W.2d 565 (Mo.banc 1976) as authority for the judgment entry. Appellant expresses "shock" that the trial court would cite *Toliver* because our state Supreme Court ruled in *Toliver* that such sentencing was error, although harmless error.

*Toliver* is directly on point and is controlling herein. In *Toliver,* the accused was serving a sentence in Kansas at the time he was sentenced by a Missouri court. Our state Supreme Court noted that there is no statutory authority for "a court of this state to order that a sentence imposed by it run concurrently with a sentence being served in another state." *Toliver* at 569. The Supreme Court further noted: "Sentences to the penal institutions of different jurisdictions are, in the very nature of things, cumulative and not concurrent." Our state Supreme Court ruled in *Toliver* that such a sentence entry is improper *not because of prejudice to an accused,* but because a trial court lacks any statutory authority to enter such a sentence requirement.

■ Noting that this charged error was not preserved for review upon failure to raise the issue in the motion for new trial,

*Harris, supra,* this court nevertheless has, for plain error, reviewed this charged error ex gratia. *Toliver* rules this question precisely and as in *Toliver,* it is found herein that the error complained of is harmless. There is no merit to appellant's final point (4) and it is ruled against him.[1]

For the reasons set forth herein, the judgment is in all respects affirmed.

All concur.

---

1. Pursuant to an amendment to § 558.026.3, RSMo Supp.1982, effective August 13, 1982 and not applicable to the instant case, circuit courts now have authority to impose sentences concurrently with sentences from a foreign jurisdiction.