STATE of Missouri, Respondent,

v.

James Jon POTTER, Appellant.

No. WD 34403.

Missouri Court of Appeals,
Western District.

Aug. 2, 1983.

Motion For Rehearing and/or Transfer to Supreme Court Overruled and Denied Sept. 28, 1983.

Application to Transfer Denied
Oct. 18, 1983.

Thomas J. Marshall, Moberly, for appellant.

John Ashcroft, Atty. Gen., and John M. Morris, Asst. Atty. Gen., Jefferson City, for respondent.

Before TURNAGE, P.J., SOMERVILLE, C.J., and KENNEDY, J.

KENNEDY, Judge.

The defendant James Jon Potter was convicted upon jury trial of capital murder, § 565.001, RSMo 1978, and sentenced to life imprisonment without parole for 50 years. He appeals.

Finding no prejudicial error in the trial of the case, we affirm the judgment.

First, the facts:

The murder victim was Ed Schneider, 70 years old, who lived alone in a mobile home located in a rural part of Macon County, near Bevier. His body was found by officers on August 6, 1981, in a wooded field about a quarter of a mile from his residence. His hands and his feet were tied together behind him. His death had resulted from one or more blows to the head, causing a brain injury. It was later learned that his death had occurred on the evening of August 4, 1981.

The details of his death were supplied by the trial testimony of Lori Walker and of defendant James Jon Potter, both of them participants in the homicide, and by a statement given by Potter after his arrest which was introduced in evidence at the trial.

Potter was 18 years old at the time of the crime. Lori Walker was his friend. She lived, evidently, in Kansas City, Kansas, and it was from there they started out on their criminal adventure. Potter was well acquainted with Schneider and knew where he lived. The preceding February he had lived with Schneider while he was remodeling a trailer. While living there he had stolen some guns from Schneider. In the process of recovering and restoring the stolen guns to Schneider, some of Potter's auto-body-repair tools had been given to Schneider by the police. Potter told Lori he was going to steal them back. The events that followed proceeded according to a plan they formulated.

Potter himself had no car. Lori furnished the car. They took a .22 rifle from Lori's father's house and put it in the car trunk and struck out from Kansas City, Kansas, toward the vicinity of Schneider's home. They stopped at Macon and purchased a pellet gun, a container of BB's, a container of pellets, and two lengths of clothesline.

After it was dark, they drove to a point near the entrance to Schneider's premises, and stopped their car along the blacktop public highway. There was a lane of some undisclosed distance from the highway entrance to the location of the mobile home. In accordance with their plan, Lori went to the door of the mobile home where Schneider lived. Potter stationed himself behind a building along the side of the lane.

When Schneider responded to Lori's knock, she told him that she had a problem with her car and asked him to help her get it started. Schneider said he would drive her to Macon for help. He put on his overalls. He furnished himself with a flashlight and put a pistol in his hip pocket. (Lori saw him do this. Potter had expected him to arm himself with the pistol when leaving the trailer.)

As Schneider and Lori walked along the lane toward the highway, Potter stepped out from his hiding place, pointed his rifle at Schneider and ordered him to stop. Schneider shined his flashlight toward Potter and reached for the gun in his pocket. According to Lori, he never got the gun out of his pocket. Lori wrestled him to the ground. She tied his hands behind his back with the clothesline which she had put in her purse. They also gagged him with some material which Lori had in her purse.

According to Lori's testimony, Potter struck Schneider in the head with the rifle. She heard a "thud noise" and heard Schneider moan. She was unable to remember at trial whether she saw this. She then went to the trailer, and she heard "thud sounds" from the location of where Schneider was lying on the ground, face down. Afterwards the gun was broken and had blood on it.

Potter placed Schneider in the trunk of Lori's car, drove him out into the field and left him there.

The two of them took several items of property, including guns and tools, from the mobile home and outbuildings, putting them in Lori's car and Schneider's. Potter drove Schneider's car and Lori her own. They returned to Kansas City.

Potter's own testimony about their plan for the crime was as follows:

> We were going to get—go down and try to get Mr. Schneider under gunpoint. That way he wouldn't be firing, so therefore, he wouldn't—nobody would get hurt. We was going to tie him up and put him back in the trailer. . . . She was going to bring him out where I could get him under gunpoint. From there we could tie him up, put him some place where he couldn't cause us any trouble and I couldn't cause him any trouble.

Potter's testimony of events beginning with his encounter with Schneider was as follows:

> He was flashing the light in my eyes. Somehow he dragged the .38 from his left-hand pocket. He brought it up and he aimed it at my chest. I was approximately six feet away from him. He had

it aimed at me. Lori saw that he had it out. She pulled his arm away, then the gun went off.... I had it [the .22 rifle] on my shoulder. I had it in the firing position.... I had more or less my sights locked on to Ed Schneider.

His description of his striking Schneider was as follows:

> After the gun had fired, I jumped over a small bush that was there. An obstacle, I think it was a bush. I jumped over it, and Lori Walker was throwing him down on the ground. Ed still had the gun in his hand. She was throwing him down. As he was going down, I hit him. I hit him once in the back of the head on the left side, between him and the ground.

A second blow he described as follows: "After he was down, we were trying to tie him. He kept pushing up with his left arm. At that time I hit him in the left shoulderblade, enough to push him—I hit him with the rifle butt.... The rifle butt cracked again."

He said that Schneider was in "good condition" when he left him in the field, unhurt and "talkative," "yelling for us to let him go."

Appellant's points, abbreviated, are as follows:

1. *The court erred in allowing the amendment of the information.*

■ The information was allowed· to be amended on the day of the trial by adding the words "with premeditation, deliberately and unlawfully" to characterize the defendant's act.[1] Appellant's objection to the amendment, made to the trial court and carried forward in his brief here is, that he had had *no preliminary hearing* on the charge of capital murder; that the original information had omitted those words,

charging defendant only with manslaughter, § 565.005, RSMo 1978.

We have not been furnished with the *original complaint* upon which the preliminary hearing was held, §§ 544.020, 544.250, 544.350, RSMo 1978; Rules 22.02, 22.07(c), and we have no way to consider the appellant's point that he had had no preliminary hearing upon the charge of capital murder. Rule 30.04(a); *State v. Brown,* 654 S.W.2d 290 (Mo.App.1983); *State v. McClain,* 602 S.W.2d 458, 459 (Mo.App.1980).

The appellant makes no contention that the information upon which the case was tried was insufficient, the issue before the court in the two cases cited by him, *State v. Brooks,* 507 S.W.2d 375 (Mo.1974), and *State v. Shriver,* 275 S.W.2d 304 (Mo.1955).

2. *The evidence was insufficient to support a conviction for capital murder.*

■ Appellant in his brief says that the evidence does not support any finding: "that Appellant intended to take the life of Ed Schneider, or that Appellant knew that he was practically certain to cause the death of Schneider, or that Appellant considered taking the life of Schneider and reflected upon this matter cooly and fully before doing so." He says that first-degree murder, § 565.003, RSMo 1978, was the charge which fits the case, and no higher grade of homicide should have been submitted.

We hold, however, that the evidence was sufficient to support a conviction for capital murder. The evidence, as shown by the facts which we have recounted above, supports each element for which defendant says support is lacking. In *State v. Turner,* 623 S.W.2d 4 (Mo. banc 1981), the same contentions were made as the appellant makes here. It holds on similar evidence—a murder committed in the course of a robbery—that a submissible case of

---

1. The case was tried upon the following information. The italicized words were added by amendment:

> The Prosecuting Attorney of the County of Macon, State of Missouri, charges that the defendant, in violation of Section 565.001, RSMo, committed the Class A felony of capital murder, punishable upon conviction under Section 565.008.1, RSMo, in that the defend-

ant and another willfully, knowingly, *with premeditation, deliberately and unlawfully* caused the killing of Christopher Edward Schneider by striking him about the head and upper body on or about August 4, 1981, in the County of Macon, State of Missouri, thereby causing him to die on or about August 4, 1981, in the County of Macon, State of Missouri.

capital murder was made out. *Turner* is controlling.

■ 3. *The court erred in failing to instruct on self-defense.*

Here we review the evidence most favorable to defendant's hypothesis of self-defense. *State v. Thomas,* 625 S.W.2d 115, 122 (Mo.1981). Our inquiry is whether the evidence as so viewed would support a finding of self-defense.

■ We hold that no selection of evidence in this case and no construction thereof, would support a self-defense submission here. Taking as true defendant Potter's testimony that Schneider still had the .38 pistol in his hand when Potter struck him in the head with the rifle, that furnishes Potter no right of self-defense:

> It is not enough to justify or excuse the homicide that in the course of the difficulty it became necessary for accused to kill deceased in order to save his own life or prevent great bodily harm; but he must also have been free from fault in provoking or continuing the difficulty which resulted in the killing. Accused cannot avail himself of, or shield himself on the ground of, a necessity which he has brought on by his own fault or wrongful act.

40 C.J.S. *Homicide* § 117 (1944). § 563.031, RSMo 1978; *State v. Fincher,* 655 S.W.2d 54 (Mo.App.1983); *State v. Grier,* 609 S.W.2d 201, 203 (Mo.App.1980); see generally cases collected at 15 Mo. Digest *Homicide* Key No. 112(1).

4. *Court erred in refusing request of jury to be advised of penalty for first-degree murder during their deliberations upon guilt or innocence phase of trial.*

■ During the course of their deliberations on the guilt or innocence phase of the trial, the jury sent a note to the court: "What is the maximum penalty for 1st degree, 2nd degree and felony 2nd and are we in any way responsible for assessing the penalty?" The court sent back a note saying: "I am not permitted to answer your question about penalties."

Defendant's argument here is based upon the fact that the court in the voir dire examination had advised the jury that the punishment for capital murder was life in prison with no parole for 50 years or death. This advice had been given as a preface to inquiring whether the jurors had scruples against the assessment of the death penalty. Defendant says that since the jury knew the penalty for capital murder, they should have been advised of the penalties for the other grades of homicide about which they inquired.

The court was correct in declining to give the jury further instructions with respect to the penalties. § 565.006.1, RSMo 1978; see *State v. Reynolds,* 608 S.W.2d 422, 424 (Mo. 1980). No objection was made to the court's voir dire statement to the jury panel, advising them of the penalty for capital murder, and no complaint is made about it on this appeal. Actually, the defendant was no worse off by the court's refusal to respond to the jury's inquiry, than if they had not made the inquiry at all.

The judgment is affirmed.

All concur.

