STATE of Missouri, Plaintiff–Respondent,

v.

Randall Keith TAYLOR, Defendant–Appellant.

No. 55108.

Missouri Court of Appeals, Eastern District, Division Four.

May 23, 1989.

John Klosterman, Columbia, for defendant-appellant.

William L. Webster, Atty. Gen., John P. Pollard, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SMITH, Presiding Judge.

Defendant appeals from his conviction by a jury of assault in the second degree and his resultant sentence by the court to five years imprisonment. We affirm.

The events leading up to the charged crime arose from heavy drinking on New Year's Eve by two different groups of people at different locations. The victim, Jeff Schulte, sixteen years old, was a football player six feet tall and weighing 200 pounds. He and his sister and three friends attended a dance in St. Anthony. All became intoxicated. The sister drove the car on its return trip to their home in Wardsville.

Defendant and six of his friends attended a party in Dixon where they also achieved varying levels of intoxication. Defendant and his group were returning to Jefferson City in two vehicles, a van and defendant's Monte Carlo driven by defendant. One occupant of the van was Bill Hatfield. Both defendant and Hatfield were smaller than Schulte. Defendant was 26 years old.

The two groups came together near Meta. Considerable dispute existed in the evidence concerning which group began erratic driving actions harassing of the other. There was evidence from which a jury could have found defendant's group drove in a fashion to harass Schulte's group and that eventually the van, which was in front, pulled across the road blocking it and causing Schulte's car to stop. There was contrary evidence that Ms. Schulte initiated a series of driving maneuvers in which she slowed down, attempted unsuccessfully to prevent defendant's group from passing her by changing lanes, passed both vehicles of defendant's group at high speed on a blind curve and then stopped suddenly on the highway forcing the van to pull around her at cross angles to the road. Hatfield immediately exited the van and Schulte disembarked from his vehicle. Hatfield testified Schulte struck him in the chest and he responded with four blows to Schulte's face which had no apparent effect on Schulte. The two then began wrestling and Schulte was obviously prevailing.

A witness in defendant's car testified that defendant immediately jumped out of the car and while half-way out of the vehicle "took a tire iron from underneath the seat and ran around the front of the car." At that time the witness observed Hatfield and Schulte wrestling. She did not see Schulte strike Hatfield. When defendant left the vehicle the witness had heard nothing said from outside the automobile. Defendant ran to where the two men were struggling and struck Schulte from behind "around his head" with the tire iron. Schulte dropped his hold on Hatfield and turned around to face defendant. Defendant raised the tire iron and struck Schulte in the head with the tire iron. Schulte had his arms raised. He was struck by defendant in the head with the tire iron several more times. The witness testified that defendant did not move away from Schulte. There was evidence that defendant stated to Schulte during the blows, "You want some more?" Finally Schulte fell to the ground. Other fights had meanwhile broken out. Defendant then used the tire iron to break the headlights and all of the windows of the Schulte car. He and his

friends reentered their vehicles and left the scene.

Schulte was hospitalized for several days after the incident and his injuries were of a life-threatening nature. He sustained permanent amnesia concerning the incident. It was stipulated that Schulte sustained serious physical injury.

Defendant's evidence was that when he arrived at the scene he saw Schulte strike Hatfield and then saw the two wrestling. Defendant remained in his vehicle until Hatfield called out, "Get him off of me, he's getting my knife." Hatfield always had with him a large folded up knife in a sheath which he carried on his belt. He testified that during the fight he felt tugging on the sheath but the knife was never removed from the sheath. Defendant testified he was aware that Hatfield carried the knife and that he exited the car with the tire iron because he feared that Schulte was going to use the knife on Hatfield. After the first blow, when Schulte turned to face defendant, the defendant stated he attempted to retreat because he feared for his life and thought Schulte might have a knife although he never saw one because of poor visibility at the scene. He struck Schulte several more times with the tire iron to protect himself. When he left the area, he did not realize Schulte was so seriously injured. Defendant broke the headlights and windshield of the Schulte vehicle so that that group could not follow his group and continue the driving harassment. He denied having broken the other car windows.

■ Defendant raises five points on appeal. The first is that the trial court erred in overruling defendant's motion for judgment of acquittal because the evidence adduced was insufficient to support the conviction because that evidence established that defendant's actions were in defense of another and in self-defense. Sec. 563.031 RSMo 1986, recognizes defense of another and self-defense as justification for the use of physical force. The defenses are available when and to the extent the actor reasonably believes such force is necessary to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful force by the other person. Self-defense is not available if the actor is the initial aggressor unless he has withdrawn from the encounter and effectively communicated that withdrawal to his adversary. Defense of another is not available if "under the circumstances as the actor reasonably believes them to be, the person whom he seeks to protect would not be justified in using such protective force." In *State v. Taylor*, 610 S.W.2d 1 (Mo. banc 1981) [1, 2] the court stated: "In other words, appellant was not entitled to a defense that Saunders was acting in his defense in killing Glover unless, had appellant himself done the killing, he would have been entitled to rely upon the defense of justifiable homicide."

■ The language of the statute and the language of *Taylor, supra*, are not completely compatible in a fact situation where the actor reasonably, but erroneously, believes that the person he is defending was not the initial aggressor. We need not resolve that incompatibility here. Deadly force may be used in self-defense and in defense of another only when there is: "(1) an absence of aggression or provocation on the part of the defender [or the one being defended], (2) a real or apparently real necessity for the defender to kill in order to save himself [or the person defended] from an immediate danger of serious bodily injury or death, (3) a reasonable cause for the defender's belief in such necessity, and (4) an attempt by the defender to do all within his power consistent with his personal safety to avoid the danger and need to take a life." *State v. Chambers*, 671 S.W.2d 781 (Mo. banc 1984) [1–3].

■ Something more than fear of size is required to justify the use of deadly force. Some affirmative action, gesture or communication by the person feared indicating the immediacy of the danger, the ability to avoid it and the necessity of using deadly force must also be present. *Id.* [5, 6]. The reasonableness of a defendant's belief in the necessity of using deadly force is generally a question for the jury. *Id.* [7, 8].

■ The evidence here was sufficient to present a jury question on availability of the justification defenses. The witness in defendant's vehicle indicated that when they arrived at the scene Hatfield and Schulte were already locked in combat and she did not see Schulte strike Hatfield. If that testimony is accepted then defendant had no reasonable basis for believing Hatfield was not the aggressor, and therefore could not use deadly force to defend Hatfield. That witness further testified that immediately upon arriving at the scene, and before anything was said about a knife, defendant had grabbed the tire iron, exited the car and entered the fray. Defendant never saw a knife in Schulte's hands, in fact the knife was never removed from its sheath or unfolded. The jury could have believed that Schulte, using both hands in wrestling with Hatfield could not have removed the knife from the sheath and unfolded it and that defendant could not reasonably believe that he could do so. The question of defendant's reasonable belief in Hatfield's non-aggressor status and the reasonableness of his belief in the necessity of using deadly force to defend Hatfield presented issues of fact for the jury. Unless defendant's defense of Hatfield was justified then he was the aggressor in his attack on Schulte making his self-defense claim unavailable as justification for the attack. We find no error in the court's failure to direct a verdict of acquittal.

■ Defendant next contends that the court erred in giving the instruction on first degree assault which hypothesized "sudden passion as a mitigating factor to preclude conviction of first degree assault. This authorized the instruction on second degree assault as a lesser included offense, upon which defendant was convicted. Secs. 565.050, 565.060, RSMo 1986. This, he contends, was inconsistent with the evidence and the instructions on defense of another and self-defense because the only adequate cause which would result in sudden passion was the altercation between Hatfield and Schulte to which "if [defendant's] response were reasonable so as to constitute response to an adequate cause, must, by operation of law, justify appellant's response as lawful defense of another."

In *State v. Simmons*, 751 S.W.2d 85 (Mo.App.1988) [3–7], we discussed the element of "sudden passion" sufficient to mitigate an assault to second degree.

"Sudden passion means 'passion directly caused by and arising out of provocation by the victim ... which passion arises at the time of the offense and is not solely the result of former provocation'.... Adequate cause means 'cause that would reasonably produce a degree of passion in a person of ordinary temperament, sufficient to substantially impair an ordinary person's capacity for self-control.'

"... To be 'adequate,' the provocation must be of a nature calculated to influence the passions of the ordinary, reasonable, temperate person. In order for an offense to be reduced to one less culpable, there must be a sudden, unexpected encounter or provocation tending to excite the passion beyond control. Passion may be rage or anger, or terror, but it must be so extreme that for the moment, the action is being directed by passion, not reason."

One difficulty with defendant's contention is that it equates provocation adequate to cause sudden passion with conduct creating a reasonable belief in the need for defense. The two are entirely different concepts and are not mutually inclusive. The evidence in this case could allow a jury to conclude that the actions of the Schulte vehicle immediately prior to the affray created a life-threatening danger to the occupants of the van and the defendant's car. Such actions could create rage, anger or fear so extreme as to cause defendant's conduct at the scene immediately thereafter to be the product of passion, not reason. That, combined with defendant's intoxication and his perception of danger to his friend, was sufficient to permit a jury to find sudden passion. A jury could well conclude that the perception of a need for defense of Hatfield was not sufficiently reasonable to justify the use of deadly

force, but was sufficient to create sudden passion in a reasonable, temperate person thereby impairing the capacity for self-control. We find no error.

■ Defendant also complains about the action of the trial court in allowing evidence of defendant's conduct several hours after the incident in which he laughed after describing the fight and stated that he "beat the hell out of someone." The objection posed was relevancy. The conversation was relevant as to defendant's admission of having engaged in a fight as it identified defendant as Schulte's assailant. The conduct of defendant laughing about the incident is of more tenuous relevance but we cannot conclude that the trial court abused its discretion in determining that it had some relevance to defendant's state of mind at the time of the assault. We defer to the trial court's better position to weigh the probative value of the evidence against its prejudicial effect. *State v. Wood*, 596 S.W.2d 394 (Mo. banc 1980) [19, 20].

We also defer to the trial court's refusal to declare a mistrial on the basis of certain questions posed by the prosecutor, presented as defendant's fourth point. The objections posed to the questions were sustained but a mistrial was denied. We do not find an abuse of the trial court's substantial discretion in this area.

Finally, defendant raises a plain error objection to certain testimony as to the location of a party attended by defendant and the nature of a tavern frequented by defendant. We find neither error nor prejudice.

Judgment affirmed.

STEPHAN and SATZ, JJ., concur.