**STATE of Missouri, Respondent,**

v.

**David J. HOPPER, Appellant.**

**No. 23001.**

Missouri Court of Appeals,
Southern District,
Division Two.

Aug. 29, 2000.

Irene Karns, Asst. Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Adriane D. Crouse, Asst. Atty. Gen., Jefferson City, for Respondent.

ROBERT S. BARNEY, Judge.

David J. Hopper ("Defendant") appeals from his convictions, following a jury trial, of assault in the first degree, § 565.050, RSMo 1994, and armed criminal action, § 571.015, RSMo 1994. Defendant was sentenced, in accordance with the jury's verdict, to concurrent terms of thirty years' imprisonment on the assault charge and three years' imprisonment on the criminal action charge. Defendant raises one point on appeal, arguing the trial court committed plain error by: "permitting the State to adduce evidence about [Defendant's] remarks to Deputy Jared Richmond" in that the evidence's "prejudicial impact as evidence of his callous character far outweighed its probative value as to his guilt of the offense charged, which was none."

The judgment of the trial court is affirmed.

■ Defendant does not contest the sufficiency of the evidence. "On appeal from a criminal conviction, this court reviews the facts in a light most favorable to the jury's verdict." *State v. Pettit*, 976 S.W.2d 585, 587 (Mo.App.1998).

Defendant lived in Neosho, Missouri. On March 27, 1998, Robert Hitchcock, a friend of Defendant's, asked Defendant to keep a black Titan .38 caliber revolver for

him. That same day, Marcus Kimbrough, the victim, borrowed Defendant's truck. On March 28, 1998, Hitchcock returned for the gun but was told it was being cleaned. On March 29, 1998, Kimbrough stopped by Defendant's apartment around 7 a.m. to return the truck. Defendant and Kimbrough then left in the truck to search for a building suitable for cooking methamphetamine. Defendant had previously mentioned to Kimbrough about taking such a trip. The two men "zig-zagged" through the countryside for approximately thirty minutes until Defendant pulled the truck down a lane. Defendant and Kimbrough exited the truck because Defendant said the lane was too rough. The two men walked for about a quarter mile, to a point almost at the end of the lane where a little path forked off. Defendant indicated they would have to take the path to get to the building he had in mind and, although the men had been walking abreast until that point, Kimbrough stepped in front of Defendant to go down the path. Kimbrough testified that when he did so, he heard a gunshot behind him. The shot hit Kimbrough in the left bicep, spinning him around. As he spun around he saw Defendant firing a small black revolver at him. He testified he could tell it was either a .32 or .38 caliber from the size of the barrel opening. According to Kimbrough, Defendant missed with the second shot but the third shot hit him above the left eyebrow, knocking him to the ground, and rendering him unconscious. Kimbrough was shot about 11:30 a.m. He regained consciousness some time that night, long enough to realize that he was lying in a field, 200 to 300 yards from where he had been shot, and that his watch and shoes had been taken. He regained consciousness again about dawn the next day and walked for three to four hours, initially stopping at one house where no one was home, until finally finding a house where the occupants were home and could call for help. Kimbrough had been shot through the neck, through the shoulder muscle, and in the back of the head. Kimbrough lost partial hearing in one ear, his left eye was destroyed, and he had to have his eyebrow and the front part of his head reconstructed.

Defendant was called in for questioning and initially denied any knowledge of the shooting. When told Kimbrough had survived, Defendant appeared surprised and claimed the shooting was self-defense: that Kimbrough had pulled a gun on him and he had wrestled it away and shot Kimbrough.

Approximately two weeks before trial, Jared Richmond, a McDonald County deputy working at the McDonald County jail, was dispensing medication to inmates when Defendant engaged him in conversation. Defendant told the deputy that he would see him next week "because they were doing jury instructions for his trial that started on Thursday." The deputy did not initiate the conversation but asked "[w]hat did you allegedly do?" after Defendant's comments. According to the deputy, Defendant stated:

> that he had shot a guy five times; shot the man once in the head. Said the subject had lost ten percent of his brain during the shooting, and that the victim was going to testify, and that [Defendant] was going to make fun of the victim due to the fact that he was mentally retarded. He also said the guy was "just a f_____ drug dealer, and no one cared that he shot him anyway."

Defendant testified at trial that it was Kimbrough's idea to drive out in the country and that Kimbrough had told Defendant he had some automobiles he wanted him to look at and make an offer on. Defendant stated Kimbrough pulled a gun on him as they were walking down the lane, he had wrestled the gun away from Kimbrough, and the gun had fired several times. He testified he did not know how many times the gun fired but that he took off running, got in his truck and drove away, and then threw the gun out the truck window somewhere along a bridge.

At the close of evidence and argument, the jury found Defendant guilty and Defendant was sentenced to concurrent terms of thirty years' and three years' imprisonment.

In his only point on appeal, Defendant claims the trial court "plainly erred in permitting the State to adduce evidence about [Defendant's] remarks to Deputy Jared Richmond" in that "its prejudicial impact as evidence of his callous character far outweighed its probative value as to his guilt of the offense charged, which was none." Defendant concedes he did not object at trial that the complained of evidence was legally irrelevant, and seeks plain error review.

"The trial court is vested with great discretion as to the admissibility of evidence where the issue is relevancy." *State v. Henke*, 954 S.W.2d 685, 687 (Mo. App.1997). "Unless a defendant can clearly show that the trial court abused its discretion, this court will not interfere with the court's decision." *Id.* If evidence is logically relevant to a fact in issue, it may be admissible if its probative value outweighs its prejudice. *State v. Wolfe*, 13 S.W.3d 248, 262 (Mo. banc 2000).

> For evidence to be considered legally relevant, its prejudicial effect must be outweighed by its probative value. Evidence is logically relevant if it has some legitimate tendency to establish the defendant is guilty of the offense for which he is on trial.

*State v. Hayes*, 15 S.W.3d 779, 785 (Mo. App.2000) (citations omitted).

Here, the deputy did ask "[w]hat did you allegedly do?" However, Defendant's statements to the deputy made it clear that he *had* shot Kimbrough. "If testimony is otherwise admissible, that it may tend to prejudice and inflame the jury against a party does not render it inadmissible." *State v. Tillett*, 233 S.W.2d 690, 692 (Mo.1950). "Incriminating evidence is, by definition, prejudicial. The test is whether the evidence is relevant." *State*

*v. Seemiller*, 775 S.W.2d 273, 275 (Mo.App. 1989).

The situation in the case before us is very similar to *State v. Taylor*, 770 S.W.2d 531 (Mo.App.1989). In *Taylor*, two groups of people in two different vehicles became engaged in a dispute that involved erratic and harassing driving actions. *Id.* at 532. Eventually the two cars stopped and one of the passengers from each car—Hatfield and Shulte—exited their respective vehicles and began fighting. *Id.* At some point the defendant, a friend of Hatfield's, grabbed a tire iron from under the seat of the car he was riding in, exited the car, and struck Shulte in the head with it several times. *Id.* In his defense, the defendant claimed Hatfield had yelled out, "Get him off of me, he's getting my knife," that defendant had hit Shulte the first time because he was afraid for Hatfield's life, and that after the first blow Shulte turned and advanced on him threateningly. *Id.* at 533. The defendant further testified he hit Shulte several more times because he thought Shulte had Hatfield's knife. *Taylor*, 770 S.W.2d at 533. Defendant stated he then left without knowing how badly Shulte was injured. *Id.*

The trial court allowed testimony that subsequent to the fight, the defendant had recounted he had "beat the hell out of someone" and that he was laughing as he said it. *Id.* at 535. On appeal the defendant claimed such evidence should not have been admitted on relevancy grounds. The Eastern District of this Court stated:

> The conversation was relevant as to defendant's admission of having engaged in a fight as it identified defendant as Schulte's assailant. The conduct of defendant laughing about the incident is of more tenuous relevance but we cannot conclude that the trial court abused its discretion in determining that it had some relevance to defendant's state of mind at the time of the assault. We defer to the trial court's better position

to weigh the probative value of the evidence against its prejudicial effect.

*Taylor*, 770 S.W.2d at 535. The same reasoning applies to the case before us. Additionally, unlike in *Taylor*, in the case before us Defendant seeks plain error review under Rule 30.20, Missouri Court Rules (2000). Under Rule 30.20, "plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." "Manifest injustice is dependent upon the facts and circumstances of the particular case." *State v. Zindel*, 918 S.W.2d 239, 241 (Mo. banc 1996). "Plain error is one that is evident, obvious, and clear." *State v. Knight*, 920 S.W.2d 612, 613 (Mo.App.1996). Here, considering *Taylor* and the evidence presented at trial, we find no plain error resulting in manifest injustice or miscarriage of justice in the trial court's admission of the complained of evidence. Defendant's point on appeal is denied.

The judgment and sentence of the trial court is affirmed.

MONTGOMERY, P.J., CONCURS.

GARRISON, C.J., CONCURS.